(81 South. 71)

NORTON–CROSSING CO. v. MARTIN.
(1 Div. 18.)

(Supreme Court of Alabama. Nov. 21, 1918. Rehearing Denied Feb. 13, 1919.)

1. EXCEPTIONS, BILL OF ⊚⊶55(1)—PROCEEDINGS TO ESTABLISH.

Appellant's remedy, if dissatisfied with bill of exceptions, is to move to establish bill, upon which motion all parts of the bill will come under revision, resulting in a whole, historically correct and consistent with itself throughout.

2. SHIPPING ⊚⊶145 — FREIGHT — WHEN EARNED.

Where there is no specific agreement to the contrary, freight for transportation of goods

by sea is not deemed to be earned until the voyage is completed, and the goods are delivered, or ready to be delivered, at the point of destination.

3. SHIPPING ⊚⊶145 — FREIGHT — WHEN EARNED.

The parties may stipulate that freight or part thereof may be payable absolutely at the time of the shipment, or at a certain time thereafter, without regard to the performance of the contract by the carrier.

4. SHIPPING ⊚⊶145—ACTION FOR UNEARNED FREIGHT—BURDEN OF PROOF.

In shipper's action against carrier for unearned freight following loss of goods at sea, where defense is that there was agreement whereby freight was to be deemed earned at time of shipment and was not recoverable, the burden is upon carrier to prove that such agreement was expressly entered into.

5. SHIPPING ⊚⊶152—CARRIAGE OF GOODS—CONSTRUCTION OF CONTRACT.

The modification of the printed form of contract of charter party reading, "the freight to be paid in cash without discount, less the advance, if any, on right and true delivery of the cargo," so as to read, "the freight to be paid without discount in advance," did not change contract so as to preclude recovery of freight in event of loss of goods at sea, but merely made freight payable in advance.

6. SHIPPING ⊚⊶152—CARRIAGE OF GOODS—CONSTRUCTION OF CONTRACT—FREIGHT.

A stipulation in contract of charter party requiring carrier to pay certain per cent. of the marine insurance on prepaid freight did not make contract one precluding recovery of such freight on loss of goods at sea, where contract was otherwise silent in regard thereto.

7. EVIDENCE ⊚⊶442(8)—PAROL EVIDENCE—CHARTER PARTY.

Where contract of charter party was complete in itself, and was silent as to return of prepaid freight in the event of loss of goods at sea, letters were inadmissible to show express agreement against return of freight money.

8. EVIDENCE ⊚⊶461(1)—PAROL EVIDENCE—CHARTER PARTY—INTENTION OF PARTIES.

In action involving construction of contract of charter party, evidence by one of the parties as to what the other party contemplated at the time of entering into the contract was inadmissible.

9. EVIDENCE ⊚⊶151(1)—CONTRACTS—INTENTION OF PARTIES.

A witness may not testify to his uncommunicated intention.

10. SHIPPING ⊚⊶153—TRIAL ⊚⊶46(1)—RECEPTION OF EVIDENCE—SUFFICIENCY OF QUESTION.

In shipper's action for prepaid freight on loss, where defense was stipulation against recovery of freight as evidenced by requirement that shipowner pay a portion of marine insurance, it was not error to sustain objection to defendant's question whether money deducted

⊚⊶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by shipper from the gross freight had been used in the purchase of insurance on prepaid freight, since the question did not tend to elucidate the contract as in accord with defendant's contention, and, if the question was to show plaintiff already had his money, the question did not sufficiently inform the court of the purpose to show that fact.

**11. SHIPPING ☞152—ACTION FOR PREPAID FREIGHT—PLEADING.**

In shipper's action against carrier for prepaid freight, following loss of goods at sea, shipper's ownership of the contract rights created by the charter party could not be denied unless put in issue by a special plea, under Code 1907, § 5331.

**12. SHIPPING ☞152—ACTION FOR PREPAID FREIGHT—CONTRACT OF CHARTER PARTY—PRESUMPTIONS.**

In shipper's action against carrier for prepaid freight, where there was a contract of charter party between the two parties introduced in evidence without an assignment by indorsement or otherwise, it will be presumed that the vessel was loaded for account of the shipper, although loaded by another concern.

**13. SHIPPING ☞152—CARRIAGE OF GOODS—ASSIGNMENT OF CONTRACT RIGHTS UNDER CHARTER PARTY—ACTION.**

Under Code 1907, §§ 2489, 5158, an action for freight paid carrier by assignee of rights under charter party must be instituted in the name of the assignor.

**14. SHIPPING ☞152—RECOVERY OF PREPAID FREIGHT—AMOUNT.**

Upon loss of goods at sea, where freight has been prepaid, shipper is entitled to recover, not the gross freight so called, but the gross freight less port charges, dispatch money, and commissions, where it is stipulated that these charges should be paid by shipper out of the gross sum mentioned as freight money.

**15. COSTS ☞234—APPEAL—REDUCTION OF JUDGMENT.**

Appellant, who succeeds in having judgment reduced from more than $48,000 to $42,000, is entitled to costs on appeal.

Appeal from Circuit Court, Mobile County; Norville R. Leigh, Jr., Judge.

Action by William H. Martin against the Norton-Crossing Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Palmer Pillans, of Mobile, for appellant.

Gregory L. & H. H. Smith, of Mobile, for appellee.

SAYRE, J. This is a suit by appellee to recover freight prepaid under a contract of charter party entered into between appellee and appellant. The vessel and cargo were lost at sea.

[1] On the submission of this cause a motion to strike a part of the bill of exceptions was argued, and the court very strongly intimated its opinion that the motion should be overruled. We see no reason now for a different opinion. It would not have been proper on a motion of this character to mutilate the bill of exceptions settled and signed by the trial judge. Appellant cannot accept its bill by piecemeal. If dissatisfied, it should have moved to establish its bill, and upon that motion all parts of the bill would have come under revision, resulting in a whole historically correct and consistent with itself throughout.

The complaint is stated in three counts. One is the common count for money received by the defendant for the use of plaintiff. Two is for money paid by plaintiff to defendant as freight due by the plaintiff to the defendant for transportation on the schooner Margaret Haskell from Pensacola to a port outside of the United States, and it is alleged that "thereafter said 'Haskell,' while upon said voyage, was lost at sea, and said freight money was never earned, but the defendant has, nevertheless, failed and refused to pay the same to the plaintiff, although often requested so to do." Three is similar to two, the difference being immaterial to any question raised in the cause, which was tried by the court without a jury on the plea of the general issue.

The facts were undisputed, and may be summarized as follows: Plaintiff and defendant, the latter owning the vessel, entered into a contract of charter party under which the schooner Margaret Haskell was to carry a cargo of lumber from a safe Gulf port to the west coast of Italy. The instrument was signed "Norton-Crossing Company, by Jos. H. Strange, Pres.," and "Gulf Export Company, by Wm. H. Martin, Manager," and it appeared that Gulf Export Company was the trade-name in which plaintiff did business. The vessel was loaded at Pensacola by the Gulf States Shipping Company, and by it the freight was prepaid to defendant. The gross freight amounted to $48,754.25; but there was a stipulation for the payment by the charterer of certain charges by him of $4.50 per standard of the entire cargo. Of the freight money, $6,841.27 was applied to those charges, and $2,437.71 was applied in payment of brokerage, as provided by the contract. Five per cent. was retained for insurance.

Defendant contends that by the terms of the charter party, construed in the light of attendant circumstances, the freight was due whether the voyage was or was not performed; that the action was not rightly brought in the name of the plaintiff; and, in any event, that the judgment was excessive.

[2] It is the admitted law of the American courts that, where there is no specific agreement to the contrary, freight for the transportation of goods by sea is not deemed to

be earned until the voyage is completed and the goods are delivered, or ready to be delivered, at the point of destination.

[3] However, the parties may stipulate by express words, or by words which, though not express, are sufficiently intelligible to that end (Ellenborough in Silvale v. Kendall, 4 M. & S. 37), that the freight, or any part thereof, shall be payable absolutely at the time of the shipment of the cargo, or at a certain time thereafter, without regard to performance of the contract by the carrier. 7 Am. & Eng. Ency. Law, 246.

In the preparation of the contract in this case, dated November 4, 1915, a printed form was used. The ninth paragraph of the original form read as follows:

"The freight to be paid in cash without discount, less the advance, if any, on right and true delivery of the cargo; but the receivers of the cargo are to pay on account of freight during delivery, if on the continent, in cash, at the rate of exchange current on the day of steamer's arrival for short sight bankers' bills on London."

By cancellation and interlineation this paragraph was made to read:

"The freight to be paid without discount in advance."

And at the end of the printed form these words in manuscript were added:

"Full freight to be prepaid on signing bills of lading. Vessel to pay cost of war and marine insurance on prepaid freight not exceed 5%."

Defendant's contention going to the right of recovery, to state it in another form, is that these provisions of the charter party suffice to make it clear that the parties intended that the freight should be considered as earned, whether or not the vessel or goods were lost on the voyage, or, at least, that these provisions left the contract ambiguous on this point, so that evidence aliunde should have been admitted to interpret the otherwise indeterminate intention of the parties.

[4] As the contract, according to defendant's construction of it, was intended to control the American rule of law applicable to such contracts, and to substitute an agreement of the parties to a different effect, the burden rested upon defendant to make this plain to the court. The weight of this burden is thus expressed by the Supreme Judicial Court of Massachusetts, per Bigelow, C. J., in Benner v. Equitable Ins. Co., 6 Allen (Mass.) 222:

"It is necessary to express it in terms so clear and unambiguous as to leave no doubt that such was the intention in framing the contract of affreightment. Otherwise the general rule of law must prevail."

[5] Recurring in the first place to the change in the ninth paragraph, we are unable to see that, directly or by implication, it accomplished or signified anything more than to make the freight payable in advance, leaving the question whether it should be returned to plaintiff in the event that contract of carriage was unperformed to be wholly determined by the general rule of law on that subject, or by the manuscript addition to the contract, if that were sufficient to effect a change in the application of that rule.

We have quoted the manuscript addition, and that is the only other express provision of the contract which is supposed to have bearing on the question immediately at hand. In this connection defendant offered to prove that plaintiff had with defendant a contract in identical terms for the carriage of freight by defendant's schooner Van Allens Boughton, and that in letters (offered in evidence, but rejected by the court) written to defendant in February and March, 1916, plaintiff had construed the Boughton contract as defendant now contends the Haskell contract should be construed, and likewise with reference to a letter 'to defendant March 8, 1916, in which plaintiff, speaking of the Margaret Haskell, said:

"We are sorry to see that this vessel has been lost, and hope you have the value of the ship covered by insurance; in that case, the freight money collected would be clear profit."

Defendant's argument against a return of the freight money is grounded in the main upon the consideration that the manuscript addition provided that the vessel was to pay for insurance on prepaid freight. It is said that if it had been the intention of the parties that the freight was subject to be recovered back in the event the contract of carriage was not performed, then it was at the ship's, not the shipper's, risk, and the shipper would have been entirely unconcerned as to whether the ship insured or not, and therefore it would have been idle to add a clause obliging the ship to pay 5 per cent. towards the insurance premium. If, however, the argument proceeds, the freight was not recoverable back, and therefore was at the charterer's risk, then it is entirely reasonable that the shipper should have required the owner of the vessel to insert in the contract an obligation to pay a part of the insurance premium, because otherwise the owner would receive his freight money in advance, without being put to the expense of protecting it by insurance during the voyage, and the charterer would not only have to pay the freight in advance, but would also have to carry the burden of insuring it; or, stating the proposition in another way, it is said that, if the freight be prepaid under such circumstances as to be recoverable back, then the charterer has nothing at risk and no insurable interest, but the insurable interest lies in the shipowner; while, if the freight is prepaid so as not to be recoverable back, then the shipowner has not an insur-

able interest, but the charterer has the freight at risk and has the insurable interest. Consequently it is said in logical conclusion, in cases of dispute whether the prepaid freight money has become the absolute property of the shipowner or was intended merely as an advance to be repaid if the voyage should not be performed, one of the tests most commonly applied by the courts is to ascertain what was the expressed intention of the parties as to who should insure the freight, and that, if the contract shows that it was the intention of the parties that the vessel should insure, this stamps the contract as one by which it is intended that the payment shall be absolute, shall remain the property of the shipowner in any event; citing English and American authorities, text-writers, and adjudicated cases.

We think it must be observed that the force of the foregoing statement, which we have reproduced substantially in the language of the brief for defendant (appellant), depends altogether upon the proposition that, in a case where the parties intend that prepaid freight shall be ·repaid in the event of nondelivery, the shipper has no insurable interest in the freight charge. But we think that proposition cannot be maintained as applicable to the case at bar for the reason, in the first place, that it is in terms inapt. The charter party does not provide that the vessel should insure the entire amount of the prepaid freight, but should pay "no: (to) exceed 5%," thus probably, or possibly at least, contemplating a division of the risk. In the next place, with the vessel lost or destroyed—and this voyage was undertaken in a parlous time—the solvency of the shipowner may have been affected, and the charterer, bargaining to have his money back, was interested in protecting himself against such a contingency.

"The plainest instance of an insurable interest is the ownership of the subject of insurance. * * * The chattel owned may be held in trust, or may be subjected to incumbrances, such as mortgages and liens, or to rights in other persons, as by deed or demise or contract of charter party; or it may be sold under reservations of rights or liabilities in the vendor, or may be possessed so conditionally as to be liable to defeasance at the will of another, or to seizure for a forfeiture incurred before the voyage described in the policy. In all these instances an insurable interest undoubtedly exists. * * * Besides 'the property of the thing,' there may be an 'interest derivable from it,' * * * or a liability coupled with the loss of the thing, constituting an insurable interest in the person for whom such benefit or on whom such liability exists." 1 Arnould Marine Ins. (6th Ed.) pp. 56–57.

Defendant lays stress in argument on Mehrbach v. Liverpool & Great Western Steam Co. (D. C.) 12 Fed. 77, and Burn Line v. U. S. & A. S. S. Co., 162 Fed. 298, 89 C.

C. A. 278, among American cases. These cases have had due consideration; but we hardly would feel justified in a statement of them, particularly the last named, of such length as to develop fully wherein they differ from the case at bar. It must suffice to say that one express provision of the agreement in the first named was that the shipper should pay the freight in advance and assume all the risks of the voyage, including the risk of a failure to perform the voyage by reason of perils of the sea, and this, without more, was reason enough for the judgment rendered in the federal district court; and in reference to the last named, that a wholly different question was involved, and the expression quoted by defendant was pure dictum and seems to have been casually made.

Defendant quotes the text of 7 Am. & Eng. Ency. of Law, p. 247, as follows:

"*Insurance as a Test.* Since freight payable absolutely in advance is at the risk of the cargo owner, but an advance as a simple loan is not, when it appears from the contract that it is intended that the cargo owner shall insure such advance, this seems to stamp the transaction as a payment on account of freight, and not a mere loan."

This statement is based entirely upon the English authorities, to which we shall refer.

Defendant quotes also Congdon on General Average, p. 161. No authority is cited to the text, but the form of the statement indicates that it, too, is based upon the English law.

In the courts of England' prepaid freight is not recoverable in the absence of an agreement to the contrary, but loans to a vessel are recoverable as are other loans; and so, it seems, the courts have been frequently called upon to decide whether money advanced by the shipper to the vessel was intended as prepaid freight, and therefore not recoverable in case of a loss of the vessel, or a loan which would be recoverable in that event. Such was the question in the cases cited for defendant, and such is the question with reference to which the English text-writers assume to speak. The general effect of what they say is that, where the contract is silent or ambiguous on this point, the fact that the charter party provides that the shipper making advances shall insure them is deemed "strong to show that the advances are to be on account of freight." Carver's Carriage by Sea (5th Ed.) p. 729. This would appear to be the effect also of the quotations from the American and English Encyclopedia and Congdon on General Average, the last of which appears to be an American book of only quasi professional interest. We do not perceive that they, any more than the English authorities, are controlling, or even apt, in the present case. That is a reasonable doctrine which concludes that, if

the shipper is required by the contract to insure prepaid freight, it is because he retains an interest, the general rule of law to the contrary notwithstanding, and that interest is to recover it in the event the vessel is cast away and the freight is not earned. But it does not follow that, where the more equitable doctrine of the American law prevails, the fact that the vessel is required by the contract in a general way "to insure" prepaid freight, the shipper has no interest in the subject of insurance. It indicates nothing to the contrary of the doctrine that freight money is recoverable unless earned or the parties have a contract to the contrary. The shipper's interest in requiring such a stipulation is to make sure that the owner of the vessel shall be able to return the freight money in the event the vessel is prevented by the perils of the sea from earning it.

[6] We conclude, therefore, that the contract in this case is not ambiguous on the point at issue. It is silent. There is no agreement against the return of the freight money. Neither the letters offered in evidence, nor any amount of evidence to the same effect, would tend to show an express agreement against the return of the freight money. They tended to show only that at a time subsequent to the making of the contract the defendant misapprehended its legal meaning and effect. They did not change the relations of the parties; they worked no harm to defendant; they effected no change in property rights. Crass v. Scruggs, 115 Ala. 258, 268, 22 South. 81.

[7] On the face of the contract, which was complete in itself and was its own best expositor (Phillips v. Costley, 40 Ala. 489), the general rule of law held good, and the letters were not admissible as showing an express agreement to the contrary. Sullivan v. L. & N., 138 Ala. 650, 662, 35 South. 694.

[8] There was no error in that ruling of the court by which defendant was denied the right to state as a witness that at the time of making the contract, and throughout its performance, the parties "contemplated" that the risk of the prepaid freight was assumed by him.

[9] It is settled law of this state that a witness may not testify to his uncommunicated intention. Western Union v. Cleveland, 169 Ala. 131, 53 South. 80, Ann. Cas. 1912B, 534. In the present case the witness was asked to go to the length of stating the "contemplation" of another. Louisville & Nashville v. Perkins, 165 Ala. 471, 51 South. 870, 21 Ann. Cas. 1073, and cases cited.

[10] Nor was, there error in sustaining the objection to defendant's question whether money deducted by the shipper from the gross freight on account of insurance premi-

um, amounting to 5 per cent., had been used in the purchase of insurance on prepaid freight. This question did not tend to elucidate the contract as in accord with defendant's contention. If, as the argument now tends to indicate, plaintiff already had his money, the question did not sufficiently inform the court of the purpose to show that fact, nor was the question otherwise raised.

The vessel was loaded by the Gulf States Shipping Company, a business concern entirely different from the Gulf Export Company or Martin, the plaintiff. But it was loaded "under the contract of charter party," and the Gulf States Shipping Company paid the Norton-Crossing Company the money now sought to be recovered less 5 per cent. Defendant sought to elicit testimony to show the contract or arrangement between the plaintiff and the Gulf States Shipping Company under which the schooner was loaded and the freight paid; but that was denied. Defendant now insists that, on the proof, judgment should have gone for it.

[11-13] Plaintiff's ownership of the contract rights created by the charter party put in evidence could not be denied unless put in issue by a special plea. Code, § 5331; Sanders v. Williams, 163 Ala. 451, 50 South. 893. The charter introduced in evidence bore no evidence of an assignment by indorsement or otherwise. Presumptively the vessel was loaded for account of the plaintiff. Alexander v. Alabama Western R. R. Co., 179 Ala. 480, 60 South. 295. In any event, the suit must have been prosecuted in the name of the plaintiff. Morrow v. Wood, 56 Ala. 4; Code, §§ 2489, 5158. And on the common count, at least, the plaintiff was entitled to recover.

[14] The judgment was excessive. Pretermitting questions as to the propriety of the award under the pleadings, our judgment is that the freight money that could have been earned by plaintiff under the charter party was not the sum of the gross freight, so called, but was the gross freight, so called, less port charges, dispatch money, and commissions; for it was stipulated that these charges should be paid by plaintiff out of the gross sum mentioned as freight money. The amount actually received by defendant for carriage of the cargo was $38,414, and this, with interest to the day of·judgment, July 23, 1917, amounted to $42,000. The judgment rendered will be reversed, and a judgment will be rendered here, as of date July 23, 1917, for $42,000.

[15] Appellee will be taxed with the costs of this appeal.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.