(94 South. 748)

**RELIANCE LIFE INS. CO. v. RUSSELL.**
(7 Div. 235.) .

(Supreme Court of Alabama. Nov. 2, 1922.
Rehearing Denied Dec. 7, 1922.)

**1. Appeal and error ☞1040(7)—Sustaining demurrer to pleas held harmless in view of other plea.**

Sustaining demurrer to pleas in action on life policy *held* harmless, in view of another plea of cancellation of policy by mutual consent of insurer and insured, the substance of the pleas demurred to.

**2. Pleading ☞8(10)—Averment of cancellation "by mutual consent" one of ultimate fact.**

Allegation of cancellation of policy "by mutual consent" of insurer and insured is the averment of an ultimate fact, and not pleader's conclusion.

**3. Insurance ☞641(1)—Replication held to aver a completed contractual agreement that note was received in actual payment of first premium.**

Averments of replication in action on life policy *held* descriptive of a completed contrac-

tual agreement between insurer's agent, averred to have authority to that end, and insured, that a note was received by the agent in actual payment of the first premium.

**4. Pleading ☞9—Conclusion does not detract from prior allegations of fact.**

The averment that the policy was in full force and effect at insured's death detracts nothing from prior allegations of fact.

**5. Insurance ☞349(3)—In absence of stipulation, no forfeiture by failure to pay note authoritatively received as payment of premium.**

In the absence of effective contractual stipulation to that effect, life insurance is not forfeited by failure to pay at maturity a note, authoritatively received as payment of the first premium.

**6. Insurance ☞349(3)—Stipulation of policy not one for forfeiture of life insurance for failure to pay note received as payment of premium.**

Stipulation of life policy that it should not become effective till the initial premium was actually paid does not amount to one that the insurance should be forfeited for failure to pay at maturity a note authoritatively received as payment of the initial premium.

**7. Evidence ☞471(8)—Question held to call for conclusion of witness.**

The bracketed part of the question, "you had authority to do it [and they knew you were doing it]?" is objectionable, as seeking a conclusion of witness.

**8. Appeal and error ☞1048(5)—No prejudice from question in view of answer.**

There was no prejudice in allowing question, "And they knew you were doing it?" where answer was, "Not that I know of."

**9. Evidence ☞378(2)—Reply letter prima facie authentic.**

Authenticity essential to admission of a letter, received in due course of mail, is afforded prima facie by showing that it was a reply to a previous letter of the addressee to the sender; the presumption of genuineness being, however, rebuttable.

**10. Evidence ☞378(2)—Reply letter prima facie authentic, notwithstanding place of date.**

A letter received in due course of mail, and disclosing that it was a reply, is none the less admissible as prima facie genuine, because dated at a place a few miles from the sender's post office.

**11. Evidence ☞378(2)—Necessary showing to rebut prima facie genuineness of reply letter stated.**

To rebut the presumption of genuineness of a letter received in due course, and purporting to be a reply, it must be shown, not only that the purported author did not sign it, but that he did not authorize another to formulate and send it.

**12. Insurance ☞246—Life policy held canceled by acts of parties.**

A life policy was canceled, where insured in letter, replying to demand for payment of

note for first premium, returned the policy, gave his reasons for refusing it, avowed purpose not to pay the note, and demanded its return, and the company accepted the repudiation by indorsing "not taken" on the policy; and this though there was no restoration of the note and no notice of acceptances of insured's act and avowal.

### On Rehearing.

**13. Pleading ⬦⇒430(2)—Trial ⬦⇒169—Advantage of variance must be taken by objection to evidence.**

Under circuit court rule 34 (175 Ala. xxi), a special request for instruction, requiring verdict for defendant, is not an appropriate method to present the matter of variance; but the sole means by which advantage of variance may be taken is to object to the evidence whereby it would be introduced.

**14. Evidence ⬦⇒378(2)—Rule as to prima facie authenticity of reply letter not affected by death of purported writer.**

The rule as to a reply letter received in due course, being admissible as prima facie authentic, is not affected by death, a few days after its date, of the purported writer.

Appeal from Circuit Court, Talladega County; S. W. Tate, Judge.

Action by Mamie A. Russell against the Reliance Life Insurance Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The action is by appellee against appellant upon a life insurance policy belonging to plaintiff, the wife of James B. Russell, who died December 26, 1920. The policy was issued, to wit, August 31, 1920. In addition to general traverse of the single count in the complaint, the defendant filed a number of special pleas; among them pleas 6, 7, 8, and 9, to which plaintiff's demurrers were sustained. These pleas read:

"(6) For further plea, the defendant says that said policy was issued upon an application signed by the said James B. Russell, seeking the issuance of said policy, but that at the time that the said Russell applied therefor he understood that he was applying, not to this defendant, but to the New England Mutual Life Insurance Company of Boston, Mass., and not until the said policy was issued and received by the said Russell by mail did he discover that it was issued by this company, and not by the said New England Mutual Life Insurance Company; and that the said James B. Russell did not want a policy of insurance in the defendant's company, but wanted one in the said New England Mutual Life Insurance Company, and after its receipt through the mails, as aforesaid, the said Russell returned the said policy, stating he did not want the same and would not pay therefor.

"(7) For further plea, the defendant refers to and adopts as a part hereof all the allegations and averments of plea 6 herein contained, and adds thereto as a part thereof the following words of averment: That said policy was in due course returned to this defendant, marked and indorsed 'Not taken,' December 21, 1920.

"(8) For further plea, the defendant says that the policy sued on in this case incorporated therein as a part thereof the application made for such insurance policy which was signed by the said James B. Russell and at the time he so signed the same the said James B. Russell did not desire or intend to apply for insurance in this company, but intended to make said application to the New England Mutual Life Insurance Company, and after the issue of the policy sued on and its delivery to the said Russell he ascertained that such policy had been issued by this defendant company, and not by the said New England Life Insurance Company, and thereupon the said Russell returned the policy sued on, and informed this defendant or the defendant's agent that he did not want and would not pay for the policy so issued by this defendant.

"(9) The defendant refers to and adopts as a part of this plea all the allegations of plea 8 hereinabove, and adds thereto as a part thereof the following words of averment: 'And said policy was in due course returned to the defendant, and by this defendant indorsed and marked "not taken," on, to wit, December 21, 1920, and prior to the death of the said James B. Russell on, to wit, December 26, 1920.'"

With other general and special replications to pleas 1 to 5, inclusive, plaintiff interposed amended replication 13 to special plea 3. This plea (3) reads:

"The policy of insurance sued on provides in express terms that the same was based upon the application therefor, a copy of which is attached and made a part of the contract of insurance, and the said policy is also based upon the annual premium of $47.46 and the payment of the first annual premium; that the application for said policy so incorporated therein and made a part thereof, and which was signed by the said James B. Russell, contained, among other things, an agreement by the said Russell that the said policy so applied for should not take effect until the first premium shall have been actually paid, and further showed that he paid to one C. E. Shannon, agent, the sum of $47.46 in a certain note, and in said policy it is expressly provided as follows:

"'All premiums are payable in advance at said home office, or to an agent of the company upon delivery of a receipt signed by the president or secretary of the company and countersigned by said agent. A grace of one month or thirty-one days, subject to an interest charge at the rate of five per cent. per annum shall be granted for the payment of every premium after the first, during which period the insurance shall continue in force. If the insured shall die during the days of grace the overdue premium will be deducted from the amount payable thereon in any settlement hereunder. Except as herein provided the payment of a premium or installment thereof shall not maintain the policy in force beyond the date when the next premium or installment thereof is payable, if any premium or installment thereof

be not paid before the end of the period of grace, then this policy shall immediately cease and become void and all premiums previously paid shall be forfeited to the company, except as provided in the Options on Surrender or Lapse.'

"And this defendant avers that neither said premium nor any part thereof has been paid, but that the said note so given therefor to the said Shannon became due and payable on, to wit, December 15, 1920, but the same was not paid when due, nor was the same paid prior to the death of the said James B. Russell on, to wit, December 26, 1920."

Amended replication 13 to plea 3 reads:

"Plaintiff avers that C. E. Shannon, at the time of taking said application and the issuance of said policy by the defendant company, was the agent of said company, with authority to solicit said application and deliver the policy and receive the payment therefor, and that acting within the scope and line of his authority the said C. E. Shannon accepted the certain note of the said James B. Russell due on, to wit, the 15th day of December, 1920, referred to in said plea, in payment of the said first premium, and delivered said policy to the said James B. Russell, and that the said James B. Russell received said policy and accepted the same, and that said policy was in full force and effect at the time of the death of the said James B. Russell."

The defendant's demurrer to this amended replication was overruled. The objections taken to the amended replication by the demurrer and supported in the brief are indicated in the opinion.

The court refused defendant's special request for instruction C, reading:

"The court charges the jury that the original complaint in this cause alleges that the defendant insured the life of James B. Russell for the term of, to wit, his natural life. The only policy of insurance introduced in evidence in this case shows that the policy was not for the term of his natural life, but was for the term of one year from the date thereof, and your verdict must be for the defendant."

The plaintiff was accorded judgment for the full amount of the policy, with interest.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, and Harrison & Stringer, of Talladega, for appellant.

The tender back of a policy by the insured to the insurance solicitor who wrote the policy, with a statement that it is not the policy contracted for, is within and of itself a cancellation of such policy. 180 Ill. App. 611; 147 Ala. 573, 42 South. 67; 171 Ala. 415, 55 South. 144; 178 U. S. 327, 20 Sup. Ct. 906, 44 L. Ed. 1088. The insured, having the right to change the beneficiary, may by mutual agreement with the insurer surrender the policy and terminate the rights and obligations of all the parties thereto. 45 Ind. App. 411, 89 N. E. 612; 84 Vt. 350, 79 Atl. 497, 35 L. R. A. (N. S.) 844; 166 Iowa, 532,

147 N. W. 883, L. R. A. 1915A, 872. The taking of a note for the initial premium under a life insurance policy waives payment until the maturity of the note; but, such note remaining unpaid at maturity, the policy, if it so provides, becomes absolutely void. 171 Ala. 429, 55 South. 200; 203 Ala. 145, 82 South. 175; 198 Ala. 41, 73 South. 377; 27 Ala. 254; 118 Ala. 581, 24 South. 37; 157 Ala. 167, 47 South. 270. A witness cannot be allowed to state that another person knows given facts, because this is a palpable conclusion. 136 Ala. 631, 34 South. 10, 96 Am. St. Rep. 82; 6 Mich. Ala. Dig. 434. A comparison of handwriting may not be instituted by a nonexpert witness. 151 Ala. 597, 44 South. 605. A prima facie case of authenticity of a letter is made, when it is shown to have been received in reply to a previous letter by due course of mail. 14 Ency. of Evi. 744; 69 W. Va. 612, 72 S. E. 657; 14 Ala. App. 477, 70 South. 976. It is not enough to overcome the presumption of genuineness to simply prove that the signature was not in the handwriting of the purported author; but such proof must go further, and show that the signature was made without the purported author's authority. 103 Me. 87, 68 Atl. 533, 17 L. R. A. (N. S.) 229, 125 Am. St. Rep. 286. Where the complaint was predicated upon a policy for the term of three years, and the proof showed a policy for a term of one year, the variance was fatal, and the trial court erred in refusing the affirmative charge. 185 Ala. 232, 64 South. 340.

Knox. Acker, Dixon & Sims, of Talladega, for appellee.

In the absence of any stipulation with reference to forfeiture for nonpayment of a note given for premium, the premium must be regarded as paid by the note, and default in payment of the note will not forfeit the insurance. 25 Cyc. 826; 165 N. C. 149, 80 S. E. 1072, Ann. Cas. 1915D, 366; 125 Miss. 369, 88 South. 11; 32 Tex. Civ. App. 146, 73 S. W. 978; 250 Ill. 203, 95 N. E. 174. Death of the insured revokes all offers of cancellation made by him prior to his death and not accepted by the insurer prior thereto. 32 Tex. Civ. App. 146, 73 S. W. 978; 25 Cyc. 784; 192 Ala. 93, 68 South. 871; 10 R. C. L. 1151. A variance is available to the opposite party only on proper and seasonable objections to the alleged variant evidence. 185 Ala. 232, 64 South. 340; 175 Ala. xxi; 196 Ala. 660, 72 South. 261. Wherever a letter is not signed by the party purporting to have written it, the authority for the signature must be shown by those introducing the same. 91 Ala. 388, 8 South. 693; 22 C. J. 909.

McCLELLAN, J. [1, 2] With reference to the action of the court is sustaining demurrers to special pleas 6, 7, 8, and 9, it will

suffice to say that the benefit of the theory of substantial defense (unless avoided by appropriate replication) illustrated by these pleas was available to defendant under the averments of plea 5, which reads:

"For further plea, the defendant says that after the execution and delivery of the instrument sued on the same was canceled by mutual consent of the defendant and the said insured."

As appears the agreement averred in plea 5 was one to which the insured himself was a party. In such circumstances no prejudicial error attended the sustaining of demurrers to pleas 6 to 9, inclusive. The allegation in plea 5 of cancellation of the contract "by mutual consent" was the averment of an ultimate *fact*, not the conclusion of the pleader.

[3-6] Amended replication 13, to plea 3, appears in the statement ante. This replication averred the authoritative acceptance by the agent, Shannon, of Russell's note (referred to in plea 3) "in payment of the said first premium and delivered the policy" to Russell, who received and accepted the policy. These allegations were descriptive of a completed contractual agreement between the company's agent, averred to have had authority to that end, and the insured that the note *was* received by the company's agent in actual payment of the first premium. The averment that the policy was in full force and effect at the decease of the insured detracted nothing from the replication's allegations of fact. Besides, abstractly considered, it was a reiteration of a substantially similar averment in the complaint. Grounds of demurrer to this replication taking the character of objection indicated were without merit. Plea 3 relied upon provisions of the *application* stipulating that the policy issued thereon should not become effective until the initial premium was actually paid, supplementing these averments with quotation from the policy of provisions requiring the advance payment of premiums, etc. It is not averred in the plea that there was any stipulation in the note, in the application, or in the policy, that the failure to pay at maturity a note received *as payment* of the initial premium should terminate, should forfeit the insurance on or after the maturity of the note. In the absence of effective contractual stipulations so concluding (Satterfield's Case, 171 Ala. 429, 55 South. 200; Brannum's Case, 203 Ala. 145, 82 South. 175, and Norris' Case, 198 Ala. 41, 73 South. 377, in each of which the contractual status considered was materially different in respect to forfeiture from that disclosed by the present plea 3), the failure of the insured to pay a note, authoritatively received as payment of the premium, wrought no forfeiture of the insurance for the period such premium would maintain the insurance. 25 Cyc. pp. 826–828. Amended replication 13 was not subject to any of the criticisms urged in the brief as upon grounds of demurrer so objecting. There was evidence tending to show authority in the company's agent, Shannon, to receive the note *in payment* of the initial premium, and also that it was so received by the agent. In this connection Shannon testified on the cross by plaintiff:

"I had the right to collect the premium for the policy. As to receiving notes in payment of the premium, that is up to me. I had a right to receive the note instead of cash. I did it continually, and I took instead of cash notes for the first premium, continually, and I had authority to do that, and I did it in this case. I took this note in lieu of the first premium, and accepted it in lieu of the cash, from Mr. Russell. When I received this note I accepted it for whatever the premium was."

[7, 8] The plaintiff thereupon propounded this question: "You had authority to do it *and they* (meaning the company) *knew you were doing it?*" (Italics supplied.) The defendant objected to the italicized part of the question on the ground that that part of the question sought a conclusion of the witness; and the court overruled the objection. The objection was well taken. L. & N. R. R. Co. v. Perkins, 165 Ala. 471, 473, 474, 51 South. 870, 21 Ann. Cas. 1073; Norton, etc., v. Martin, 202 Ala. 569, 573, 81 South. 71. But no prejudice resulted to defendant from this erroneous ruling, since the witness, in replying, testified: "Not that I know of." Whether there was an effected surrender and cancellation of the contract by mutual consent of Russell and the company was the chief issue in the cause. It appears without dispute that the agent, Shannon, wrote Russell on December 12, 1920, calling his attention to the maturity of Russell's premium note on December 15, 1920, and requesting payment. Russell received this letter. Under date of December 15, 1920, 3 days after the date of the letter to Russell from Shannon, Shannon received through the mail a letter, written on the stationery of O. W. Tinney, of Talladega, Ala., to which Russell's name was affixed, in which reference was made to a letter received from Shannon a "couple of days ago," as well as to the note given by Russell to Shannon. This letter recited the fact of inclosure therein of the policy now sued on, that Russell did not want the policy, and hence returned it, because it was issued by a company other than the one in which he desired the insurance written, and that Russell would not pay for the policy, directing Shannon to return the note, "which," the letter stated, "I would have owed you" if the application had been placed with the preferred insurance company. This letter was dated Talladega, Ala. Russell's post office was Alpine, Ala. Russell was a mail carrier. Alpine is in the same county,

apparently about 8 or 10 miles from Talladega, the county site. Shannon gave the policy thus received to another agent of the defendant, through whom and the defendant's Birmingham office it was sent to the home office, where, in regular course, on December 21, 1920 (5 days before Russell's death), the company's representative stamped thereon the words, "Not taken." The note was not returned to Russell. It has not been since returned. It was not paid before Russell's death. The plaintiff's subsequent tender of payment of the note was refused by the company. The evidence leaves in no fair doubt that the signature to the letter of December 15, 1920, purporting to be from Russell to Shannon, was not signed by Russell's own hand.

[9-12] The letter of December 15, 1920, purporting to be from Russell to Shannon, is shown by its terms to be a reply to Shannon's letter, which was otherwise shown to bear date December 12, 1920. It was received by Shannon in due course through the mails. The authenticity essential to render a letter admissible in evidence is afforded, prima facie, where it is shown that the letter offered was a *reply* to a previous letter to that person, received in due course by mail. The presumption of genuineness thus indulged is, of course, rebuttable. 14 Ency. of Ev. pp. 744, 745; 22 C. J. pp. 908, 909; Rike v. McHugh & Groom, 188 Ala. 237, 241, 66 South. 452; American Workmen v. James, 14 Ala. App. 477, 480, 70 South. 976. The rule stated cannot be denied application in the present instance, because the letter, disclosing its character as a reply to previous letter of a "couple of days ago," was dated Talladega instead of Alpine. To rebut the stated presumption it is necessary for the party against whom such presumptively authentic letter is presented to not only adduce testimony designed to show that the purported author of the letter did not sign it, but also to adduce testimony designed to show that the purported author did not authorize another to formulate and send the letter. Capital City Supply Co. v. Beury, 69 W. Va. 612, 72 S. E. 657, 658; 22 C. J. pp. 908, 909, note 1 on latter page. Assuming that Russell did not sign the reply letter, there is no evidence tending even to negative the idea that Russell authorized another to formulate and send the reply letter in his name. As evidence upon the issue whether the policy was in force at the time of Russell's death, this letter, presumptively genuine, is to be accorded such effect as its terms fairly import. The letter, in response to the agent's request for payment of Russell's premium note due December 15, 1920, expressed in unmistakable language Russell's refusal of the policy, gave his reason for so declining to accept it, and also avowed his purpose not to pay therefor, and demanded the return of his note taken by the agent before the policy was delivered to Russell. Notwithstanding Russell's delay in avowing his purpose and in returning the policy (which under other circumstances might have become important *if* the company had questioned the legal efficacy of his delayed avowal and action), the company, at its home office, accepted Russell's repudiation of the contract by indorsing thereon, before Russell's death, the words, "Not taken," thereby manifesting the company's accord with Russell's view and contention. These expressions and acts of Russell and of the company effected a surrender and cancellation of the policy (2 Black on Rescission and Cancellation, § 492), unless the failure of the company to advise Russell of its acceptance of his act and avowal as an extinguishment of the contract (assuming, quite doubtfully, that the acts of the parties did not evince a mutually consummated agreement that a contractual status never had been attained), or unless the failure to restore the note before Russell's death operated to render incomplete the cancellation of the insurance.

In respect of the failure to restore the note before the death of Russell, it will suffice to say that the letter surrendering the policy to the company's agent and avowing Russell's purpose to not pay therefor did not interpose the return of the note as a condition precedent to the cancellation of whatever liability, ad interim, there may have been on the policy. Indeed, the terms of the letter disclose Russell's purpose to have been to refuse the policy and to consummate that through a surrender thereof, and, consequent upon this action, to demand the restoration of his note. Russell was the actor in the premises; and, if his proposal was accepted by the company, the failure to restore the note did not postpone the full accomplishment of the cancellation beyond the date (December 21, 1920) the company manifested its agreement by indorsing thereon, in regular course, "Not taken." Like considerations, afforded by the stated acts of Russell and of the company, require the conclusion that notice of acceptance of Russell's avowal, accompanying the return of the policy, was not necessary to effectuate the complete extinction of liability on the policy before Russell's death. There was shown by the evidence an agreement, a meeting of the minds of these parties, the company accepting the proposition of Russell. Defendant was entitled to affirmative instruction against a recovery by plaintiff on the defense that the contract was canceled.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

On Rehearing.

McCLELLAN, J. [13] Upon reconsideration the court is convinced of its error in affirming that under rule 34 of circuit court practice (175 Ala. xxi) special request for instruction lettered C (copied in the statement of the case ante) was an appropriate method to present the matter of variance therein described. The rule requires and the decisions to be cited affirm that the sole means by which advantage of a variance may be taken is to object to the evidence whereby the variance would be introduced. U. S. Health Ins. Co. v. Savage, 185 Ala. 232, 235, 64 South. 340; Morrison v. Clark, 196 Ala. 670, 674, 72 South. 305; Carter v. Shugarman, 197 Ala. 577, 578, 73 South. 119; U. S. Health Ins. Co. v. Goin, 197 Ala. 584, 73 South. 117; Allen v. Standard Ins. Co., 198 Ala. 522, 526, 527, 73 South. 897. The phase of the opinion, delivered on original submission, expressing the view that the matter of variance between the description of the policy in the complaint and the policy as introduced in evidence, without objection on that account, is eliminated; the conclusion now prevailing being that the trial court did not err in refusing request C. Rule 34, Cir. Ct. Prac., supra; author. supra.

Upon original consideration the court concluded that the defendant (appellant) was erroneously refused general affirmative instruction in its behalf because the undisputed evidence disclosed the cancellation of the policy by consent of the parties; the circumstances being outlined in the opinion ante. A factor vital to this inquiry was the reply letter, purporting to be signed by Russell, dated December 15, 1920, inclosing the policy in suit, as more fully described and treated in the original opinion ante. It was then held, in accordance with the good authority there cited, that a reply letter, received in due course through the mails, was prima facie authentic, was admissible in evidence, and put upon the party to be affected by such reply letter the obligation to rebut the presumption that the reply letter was authentic; and that proof that the purported signator of the reply letter did not sign it was not sufficient or efficient to rebut the stated presumption of authenticity, it being necessary for the party to go further and adduce evidence designed and tending to show that the reply letter was signed by another without authority. This conclusion is supported by Capital City Supply Co. v. Beury, 69 W. Va. 612, 72 S. E. 657, 658, noted in 22 C. J. pp. 908, 909. There was no evidence for the plaintiff (appellee) tending in any degree to show that Russell did not authorize another to sign in his name the reply letter of December 15, 1920, in which the policy in suit was inclosed; and hence the thus presumed authenticity of that reply letter, accompanying the policy, was not in any degree reflected upon or refuted, leaving the plaintiff, on this phase of the case, in a posture similar to that of any other litigant who has not discharged, in any degree, his obligation to offer evidence tending, at least, to reflect upon or to refute the prima facie presumption predicated of established facts that invite and support the presumption. The here pertinent doctrine of the Beury Case, supra, is sound and applicable in the present circumstances. The circumstances recited in the opinion in the Beury Case, supra, do not discriminate its principle from just application to the case under review.

In support of the appellee's view Cobb v. Malone, 91 Ala. 388, 8 South. 693, and 22 C. J. p. 908, are cited to the proposition that, to quote Corpus Juris—

"If the genuineness of a reply is denied, it then becomes a question of fact for the jury to determine whether or not the letter is genuine."

This text is referred to Barham v. Bank, 94 Ark. 158, 126 S. W. 394, 27 L. R. A. (N. S.) 439, 442. The case of Cobb-Malone did not involve a reply letter. Neither the conclusion in the Beury Case, supra, nor that prevailing here, is opposed to the quoted text or to the deliverance of the Arkansas court. There the predicate was an express denial by the party of the "genuineness" of the reply letter, whereas here the only evidence is that the purported signator (Russell) did not himself affix his signature to the reply letter. In the absence of evidence tending to deny genuineness, importing necessarily the exclusion of utterance of the reply letter by the purported signator's authority, the text at 3 Wigmore, § 2153, illuminates the subject with that author's customary analytical completeness.

[14] It is in effect insisted in brief for the appellee that the death of Russell 11 days after this reply letter's date (December 15, 1920), in which the policy in suit was inclosed, should avert the application of the rule. The elements of fact and circumstance that invite this rebuttable presumption and cast on the other party the stated obligation to bring forward evidence tending, at least, to rebut the presumption through evidence of no authority from the purported signer for another to utter the reply letter are predicated of the facts and circumstances related to the receipt, through due course of mail, of the reply letter, and not of those subsequently intervening through the absence or decease of the purported author of the reply letter. It appears from the evidence, without dispute, that the defendant (appellant) acted on Russell's avowals in this reply letter, inclosing the policy in suit, several days before the death of Russell.

In effect, though not in terms, it is insisted that there is evidence tending to show that this reply letter (not signed in the hand-

writing of Russell, his name being signed thereto by another) was not uttered by Russell's authority or under his sanction. We find in the record no evidence to that effect or tending to invite that conclusion. That Russell received Shannon's letter, to which this letter expressly stated it was in reply, was proven by the plaintiff's own testimony. That Russell had in his possession the policy in suit about the date of the reply letter inclosing the policy to Shannon, viz. December 15, 1920, was proven without dispute both by the plaintiff's own testimony and that of Dr. Welch, who testified that about two weeks before Russell's death on December 26, 1920, he examined Russell for a policy in the New England Mutual Insurance Company (the company mentioned in this reply letter); that Russell said, substantially, to him that he (Russell) "was taking the New England Mutual policy to take the place of the policy" in the Reliance Life Insurance Company, the policy in suit; and, also, that he (Russell) said "he thought he was taking New England Mutual at the time he took the Reliance"; and that Russell, in talking to witness, gave this circumstance as the "reason that he was then taking the New England." These statements by Dr. Welch are substantially the same as material statements contained in the reply letter of December 15, 1920.

The plaintiff, testifying, said:

"If Mr. Russell turned this policy that is sued on over to Mr. Reese, I didn't know of it."

There was no evidence or inference from evidence inviting the conclusion that Russell ever delivered the policy in suit to Reese. The plaintiff's own testimony in this connection is this:

"I didn't hear any of the conversation between Mr. Russell and Mr. Reese on that occasion, only I heard Mr. Russell say to Mr. Reese that he would not cancel his insurance in the Reliance until he had other insurance. He [Russell] didn't apply to the New England Mutual for insurance right then, but he did apply to the New England Mutual for insurance. * * * No, sir; Mr. Russell didn't say to me that he didn't intend to cancel this policy until the New England Mutual issued his policy. I didn't hear him say it to any one else in my presence."

The plaintiff also testified:

"The last time I saw this policy was in December, about the middle of December, I think. Mr. Russell had it at that time."

The application for rehearing is accordingly denied.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.