(138 So. 257)

**JOHNSON v. COMMONWEALTH LIFE INS. CO.**

4 Div. 576.

Supreme Court of Alabama.

Oct. 15, 1931.

Rehearing Denied Dec. 17, 1931.

O. S. Lewis, of Dothan, for appellant.

H. R. McClintock, of Dothan, for appellee.

THOMAS, J.

The appeal challenges the giving in writing, at defendant's request, the general affirmative instruction. The suit was on an insurance policy that was resisted of payment, for the policy was not in force because of nonpayment of premium due and payable on November 6, 1927. The date of assured's death was April 26, 1929.

The evidence shows, the issuance and delivery of the policy when initial premiums were paid, and notice of the death of assured to the general agent of defendant.

The testimony of appellant as to the third premium shows nonpayment, but afforded evidence of extension of time for discharge by installments. That of appellee was by its general agent, in part as follows:

"I handled with him for the company an extension of the third premium due on the policy that has been offered in evidence here. He paid part of it—I believe $10.00—and gave his note for the balance, due a year from the date of the policy. The note was what the company calls a premium extension note —forms furnished by the Company. That was delivered by me to the Company and they issued their receipts. The note was never paid. The facts are Mr. Johnson came in, I believe with his wife, and paid his wife's policy. He said he didn't have the money to pay it. I said we might get it extended for a few weeks. I wrote the company asking for an extension and that extension was granted. I believe it was three weeks. The extension expired in November. It was not paid at that time. I asked him after that time to pay it, I told him—he never paid it. * * *

"There was nothing further done after the 6th of November by me except to ask Mr. Johnson to pay. He talked about it several times. I asked him to pay it. I hated to see a man pay out and lose two years' premiums. I also told him if he completed this third premium his policy would be in force for several years. He said he wanted to pay his policy if he could, but his crops were so bad he couldn't pay then. I said any time he could get up the balance he could pay it if he was in good health—the time was lapsed unless he paid it. * * *

"Mrs. Johnson and I talked about it to him several times. I don't remember the exact conversation. I asked him to pay the note for his own good and for the good of the company, if he would get it up he had a chance to do it. I am the General Agent. I collect premiums. Do not have any authority to extend payments other than those notes. I didn't extend this matter at all then. I don't remember the exact conversation with Mrs. Johnson. Would not say whether I asked him to pay that note or not."

It was further in evidence that said general agent did not have authority to extend payment on the note in question, and did not extend the same.

The vice president of defendant likewise testified that his company "issued an insurance policy on the life of Zack T. Johnson on the 16th day of October, 1924, number 55,992. The initial premium was paid to us by our General Agent, Mr. A. D. Ussery of Dothan, Alabama. The second premium was paid October 12th, 1925, by the insured. The third premium was not paid. A settlement was tendered by the insured on November 23rd, 1926, he paid $8.11, in cash, and for the balance due—we agreed to extend the time of payment for the balance namely, $35.00, by a premium extension note which he signed and which note was drawn to mature on October 15th, 1927. The note was not paid when due and never has been paid. * * * Three full premiums have not been paid in cash on the policy of insurance issued on the life of Zack T. Johnson, No. 55,992. Part of the third premium was paid, $8.11. The balance of the premium was arranged by a premium extension note for $35.00, payable October 15th, 1927. A note was given, that is an extension was given by the Company for the payment of the balance of the premium evidenced by a premium extension note. I file said note as a part of my deposition marked Exhibit 'A':

"EXHIBIT 'A'

Ord Form 28:B

$35.00      Oct. 16      1926.

3.10
37.10
Interest    (This note must be dated the exact day on which the premium is due )

On or before Oct. 15, 1927 months after date, for value received _____ promise to pay the Commonwealth Life Insurance Co.    Thirty-Five and No/100 Dollars, without discount or defalcation, at _____ being the premium on Policy No. 55992 in said Company, due

Oct. 16, 1936 .

Should this note with interest at six per cent per annum not be paid when due, the above numbered policy shall become null and void as of that date.

Post Office Address

Dothan, Ala. RFD 3        Z. T. Johnson
                          Signature of Person Insured
Due:   Oct. 15 - 27

           A. D. Ussery

"This form of note to be used for first three years premiums only"

The witness was then permitted to answer, over objection of plaintiff, that defendant canceled the policy on "November 6, 1927, for non-payment of an extension note on the premium—an extension was granted the insured to that date." Witness was then asked the following question: "On what date did the policy issued on the life of Zack T. Johnson, No. 55,992 lapse? Please state fully." Plaintiff objected to this question on "the ground it called for a legal conclusion of the witness, which objection being considered by the court, was ordered and adjudged overruled, to which ruling of the Court plaintiff duly and legally excepted." Stating the facts, the witness answered: "November 6, 1927. On September 29, 1927, notice was mailed the insured at his last known address, R. F. D. No. 3, Dothan, Alabama, calling his attention to the date of the maturity of the note, that it would be due on October 15, 1927. An additional notice was mailed on October 18th— a revival notice advising him that his policy had lapsed for non payment of premium extension note and urging him to apply for its reinstatement. The premium or the extension thereof was not paid when it became due on the 6th day of November, 1927." This witness further answered that the "note was endorsed 'policy cancelled—note void' and attached to the other papers in the case and the policy lapsed."

There were motions to exclude the answer that the policy lapsed or was canceled, which were overruled by the court and exception reserved. The witness testified that he handled the matter testified about as vice president of defendant corporation; that said Ussery was its general agent at the time and place and handled the matters indicated by him. The receipt given on November 27, 1926, for the balance of the third premium, was for $35 note due October 15, 1927, and recited that the policy became null and void for nonpayment "as of that date"; that: "When the note was executed and the receipt given which is marked plaintiff's exhibit 'B' that continued the insurance in force until the due date of the note. It lapsed on the 15th day of October 1927. It was in force on the 14th day of October, 1927. There was an application for reinstatement of this policy, on the 20th day of November, 1926. There was no application for reinstatement of this policy with me after the 15th day of October, 1927. The Commonwealth Life Insurance Company did cancel that contract of insurance on the 15th day of October, 1927, we

notified the insured that his policy had lapsed." The receipt was:

"Ord. Form 19B      Z. T. Johnson
"Commonwealth Life Insurance Company
"Louisville, Ky., Nov. 27, 1926.
"Received from the owner of Contract No. 55992 Check and 1 notes for $35.00 at Oct. 15, 1927 months from Oct. 16, 1926 in settlement of the ――― Annual payment due Oct. 16, 1926.
"Amount, $43.11
"Dividend, $―――

"This receipt is issued in accordance with the terms and conditions of said notes and should any of these notes not be paid when due, the above numbered policy will become null and void as of that date.
"Interest, $―――
"Total, $43.11
"M. Kinberger, Ass't Sec'y."

The carbon copy of the notice of extension and cancellation for nonpayment of the $37.10 due October 15, 1927, as shown by defendant's record, is exhibited, and witness stated it was so stamped in his office, in the first instance, on October 15, 1927.

The payment of the policy was rejected in a letter of April 30, 1929, in these words:

"Mr. A. D. Ussery,
"Dothan, Ala.
"Dear Sir:
"Replying to your inquiry of April 29th with reference to our liability on account of the death of Zack T. Johnson, we issued a policy on this life on October 16, 1924—# 55992 for $1000.00, but the policy lapsed October, 15, 1927 for non-payment of a premium note of $35.10, which was accepted by us in part settlement of the premium of $43.11 due October 16, 1926.
"As Mr. Johnson had not paid three full annual premiums, the policy lapsed therefore with no further value, and we have no liability whatever on account of his recent death.
"Yours very truly,
"C. Krayenbuhl,
"CK/E      Vice-President."

The agent's letter of November 20, 1926, was accompanied with *Johnson's application for renewal of lapsed policy* for nonpayment of premium, check for $8.22, and note for $35. The application is set out above. And the letter to the defendant that accompanied it was:

"November 20th, 1926.
"Miss Kinberger,
"Louisville, Ky.
"Dear Miss Kinberger:
"We enclose you check for $8.22, and note for $35.00 covering premium on policy No. 55992, Zack T. Johnson. We also enclose health certificate, as the premium was past due," etc.

The letter to Ussery, in reply to the application for extension on the note due October 15th, states: "We have endorsed this note 'Extended to Nov. 6th.' and trust that he will take care of it at that time."

The witness Krayenbuhl further testified, on recross-examination, that if this premium extension note had been paid when due, November 6, 1927, it would have completed the three full annual premiums under the policy provision for extended "insurance for four years and eleven months," and carried the policy in force beyond the death of the insured. Witness was asked: "Assuming that this note is to be paid by a reduction from the face of the policy, would that place the insurance in force at the date of his death?" To which he answered: "It would not" have such extended effect to and at the date of his death. The witness further explained as to this. over objection and exception of plaintiff, that: "Any indebtedness against this policy will reduce the amount under options 1 and 2 and the term under option 3 in the proportion such indebtedness bears to the cash surrender value. The policy provides after the payment of three premiums a cash surrender value of $49.00 and extended insurance four years and eleven months. Deducting from the cash surrender value the amount of the premium note extension and interest you will have a balance of $11.90 to purchase extended insurance, and this is simply a problem in arithmetic $49.00 will buy four years and eleven months extension and $11.90 will buy extended insurance for a period of one year and two months and nine days from the last anniversary of the policy, namely from October 16th, 1927. Therefore this extended insurance would have expired December 25, 1928, several months prior to the date on which the gentleman died."

█ Assured died April 26, 1929. He knew he had not paid the third premium in full on this policy. The receipt given him for his extension premium note gave him specific notice that a nonpayment of the note on its due date would work a forfeiture on the policy contract—the note itself recited this. effect. The statements made by the general agent to the insured, as shown by the testimony, called his attention to the same facts and informed him in what manner the policy could be reinstated. Thus the assured, with full knowledge of the effect of nonpayment, permitted the default to render void his policy. Norris v. New England Mutual Life Insurance Co., 198 Ala. 41, 73 So. 377; Satterfield v. Fidelity Mutual Life Ins. Co., 171 Ala. 429, 55 So. 200. The validity and binding effect of the forfeiture clause in a life insurance policy for the nonpayment of the premium has been recognized and enforced in this jurisdiction. Norris v. New England Mut. Life Ins. Co., supra; Imperial L. I. Co. v. Glass, 96 Ala. 568, 11 So. 671; Security Mut. Co. v. Riley, 157 Ala. 553, 47 So. 735;

Equitable L. A. Soc. v. Golson, 159 Ala. 508, 48 So. 1034.

■ There is no evidence indicating any waiver of the forfeiture clause on the part of the defendant company for nonpayment of such premium. It has been held that the bare retention by the company of the note executed by the assured for the premium would not amount, after default in its payment, to a waiver of the forfeiture. Washburn v. U. C. L. I. Co., 143 Ala. 485, 38 So. 1011; Norris v. New England Mut. Life Ins. Co., 198 Ala. 41, 73 So. 377; Galliher v. State Mut. L. I. Co., 150 Ala. 543, 43 So. 833, 124 Am. St. Rep. 83.

■ The statements made to the assured by the general agent called to his attention his default in the payment of the note, the forfeiture by reason thereof, and gave instructions for reinstatement; this did not amount to a waiver under all the evidence. Norris v. New England Mut. Life Ins. Co., supra; Provident Life & Accident Ins. Co. v. Hollums, 213 Ala. 300, 104 So. 522.

The Norris Case, 198 Ala. 41, 73 So. 377, has been the rule in this state in contracts that are applicable, and was cited with approval in Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 151, 82 So. 175. And in Reliance Life Ins. Co. v. Russell, 208 Ala. 559, 562, 94 So. 748, 751, it was declared: "It is not averred in the plea that there was any stipulation in the note, in the application, or in the policy, that the failure to pay at maturity a note received as payment of the initial premium should terminate, should forfeit the insurance on or after the maturity of the note. In the absence of effective contractual stipulations so concluding (Satterfield's Case, 171 Ala. 429, 55 So. 200; Brannum's Case, 203 Ala. 145, 82 So. 175, and Norris' Case, 198 Ala. 41, 73 So. 377, in each of which the contractual status considered was materially different in respect to forfeiture from that disclosed by the present plea 3), the failure of the insured to pay a note, authoritatively received as payment of the premium, wrought no forfeiture of the insurance for the period such premium would maintain the insurance. 25 Cyc. pp. 826–828."

■ The policy of insurance contained several provisions that are pertinent. They are set out as follows in the order in which they appear in that contract:

"* * * This contract is made in consideration of the application for this Policy, hereby made a part hereof, and the *payment of the first premium* of Forty Three and 11/100 Dollars, and the *payment of a like amount* at the Home Office of the Company on or before the *16th day of* October of each year beginning Oct. 16th, 1924 during the continuance of this Policy, or until twenty annual premiums have been paid. [Italics supplied.] * * *

"*Non-Forfeiture provisions:* If this policy should lapse by the non-payment of any premium *after three full years premiums have been paid in cash,* the company, upon legal surrender of the Policy within sixty days from such non-payment, will grant the following options:

"1. The available Cash Surrender Value.

"2. Paid-up, non-participating insurance, payable at the same time as this Policy.

"3. If neither of the foregoing Options shall have been applied for as above, this Policy shall *continue automatically as term insurance from the last anniversary of the Policy,* without participation in surplus for the full amount insured thereby, *and for the number of years and months, as shown in Table. B.*

"NOTE: Any indebtedness against this Policy will reduce the amount under Options (1) and (2) and the term under Option (3) in the proportion such indebtedness bears to the Cash surrender value. The Company in its discretion may defer the payment of the cash value for a period not exceeding ninety days after the application therefor is received by this Company. [Italics supplied.] * * *

"Re-instatement: Should this Policy lapse by nonpayment of premium, it may be re-instated at any time upon evidence of *insurability satisfactory to the Company* and the payment of *past due premiums with five per cent. interest thereon,* and should the company require it any other indebtedness of the insured to the Company. [Italics supplied.] * * *

"Grace: In case of default in the payment of any premium when due, this policy will be continued in force for the full amount for one month (not less than 30 days), and payment of premium may be made during that time without evidence of insurability. * * *

| TABLE A After payment of premiums for | cash or loan value | paid-up insurance | TABLE B Extended insurance years | mos | after payment of premiums for 3 yrs. |
|---|---|---|---|---|---|
| 3 yrs | $49 | $153 | 4 | 11 | |

"Payment of Premiums: * * * All premiums are due and payable annually in advance, but they may be paid in semi-annual or quarterly installments, at the Home Office of the Company in the City of Louisville, Ky., or they may be paid elsewhere to authorized agents on or before the dates when due, in exchange for receipts signed by the President, Vice-President, Secretary, Assistant Secretary, or Treasurer, and countersigned by such agent. *If any premium, or note given therefor, be not paid when due, this Policy is null and void, subject to the non-forfeiture provisions contained herein.* [Italics supplied.]"

It will be noted that the opinion in Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 So. 298, adverts to the lack of sufficient policy provisions as to forfeiture for nonpayment *where the assured died within the period or year covered by the extension notes.* Such was not the fact as to the instant policy, where the death occurred beyond the one year period or the time of extension. The instant policy provides that it has a *loan value, paid-up insurance, or extended insurance, only after the payment of the premium for three full years has been paid in cash.* It required cash payment at and when stipulated to build up a reserve with which the period of extension could be purchased.

Under the foregoing provisions of the policy, if that contract had been automatically extended to such date as the cash payment made would buy—to December 25, 1928—this expiration would have been prior to the death of the assured on April 26, 1929.

This is explained by the evidence of the vice president of the company as follows:

"Q. * * * Assuming that contrary to the defendant's contention, that this premium extension note was paid when it fell due November 6th, 1927, tell the Court whether this policy would have been in force on the date of his death? * * * Answer: Yes sir, the payment of the note would have completed the payment of three full annual premiums and the policy provides extended insurance for four years and eleven months which would have started October 16th, 1927, which of course would have carried the policy beyond the date of the death of the insured.

"Question: Assuming that this note is to be paid by a reduction from the face of the policy would that place the insurance in force at the date of his death? Answer: It would not.

"Question: Explain why. Answer: Assuming the amount of this note is an indebtedness against the policy then by referring to the second page of the policy under benefits and provisions the policy provides: 'Any indebtedness against this policy will reduce the amount under options 1 and 2 and the term under option 3 in the proportion such indebtedness bears to the cash surrender value.' The policy provides after the payment of three premiums a cash surrender value of $49 and extended insurance four years and eleven months. Deducting from the cash surrender value the amount of the premium note extension and interest you will have a balance of $11.90 to purchase extended insurance and this is simply a problem in arithmetic. $49 will buy four years and eleven months extension and $11.90 will buy extended insurance for a period of one year and two months and nine days from the last anniversary of the policy, namely October 16th, 1927. Therefore this extended insurance would have expired December 25, 1928, several months prior to the death on which the gentleman died."

Such were the answers of an *insurance expert* as to the extension features of the policy sued on and the effect of nonpayment of premiums as to such extension.

This is the just and reasonable interpretation of the contract, when all of its provisions are considered in the context and under the rules of law that obtain. It is axiomatic that assured bought no other protection than that contracted and paid for under the law and rules governing the construction of insurance contracts, and their relation to all other contracts of like class. That is to say, the policy of insurance and its extension, if it existed, *had no money value out of which could be deducted or paid* the due premium for the extension to the time of assured's death. All insurance is based on the doctrine of legal reserves paid in and becoming a part of the assets of the company. That is, if a policy should lapse before the legal reserve has established this nonforfeiture feature, then the insurance terminates without value. In order to create this reserve at the end of the third year, a certain part of each annual premium must be available and invested to earn the interest or percentage required. And until the full amount of the third premium is paid in cash there would not be the payment as required in the contract, of three full years' premium to create the required reserve; and, as stated, without the full amount of this reserve there was no nonforfeitable value available to extend the insurance in force to date of assured's death. The note was not paid in full creating the reserve. And the extended insurance provision, not paid for, did not automatically carry the insurance in force beyond his death.

The parties are competent to agree that upon nonpayment at maturity, the premium note shall become void and no part of the assets of the company, in which event all rights of the party must necessarily cease— a just provision for protection of the other policyholders in the same class. And not having paid per contract at the time indi-

cated, such assured is out of the class or group protected by the provision for extended insurance at the time of his death.

The affirmative instruction given the jury, at the request of the defendant in writing, under the uncontroverted evidence and reasonable tendencies thereof (McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135), was properly given.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.