141 So. 234

AMERICAN NAT. INS. CO. v. FEW.

I Div. 635.

Supreme Court of Alabama.

April 14, 1932.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

578

Tucker & Mabry, of Grove Hill, for appellee.

**KNIGHT, J.**

Suit on an insurance policy brought by plaintiff (appellee) against the defendant (appellant). The policy was issued upon the life of appellee's husband, Jerry G. Few.

Jerry G. Few and his wife, Mattie Ethel Few, resided at Walker Springs, in Clarke county. The appellant has its home office at Galveston, in the state of Texas. The appellant had as its state agent Z. E. Bellah, at Birmingham, Ala., and one J. W. Leggitte as its district agent. This district agent resided at Chatom, Washington county, and his territory comprised the counties of Clarke, Choctaw, Marengo, and Washington. Under the evidence, Leggitte was in no sense a gen-

eral agent of the company; nor does the evidence tend in any way to show that he had any such apparent authority. His duties were to solicit insurance, take applications therefor, collect premiums, and deliver policies.

It appears from the evidence in the case that about the middle of January, 1928, Jerry G. Few and his wife made application in writing to the appellant company for a joint twenty-year endowment policy. While the policy applied for was to be a joint twenty-year policy, separate applications were signed. After these applications were received at the home office of the company at Galveston, the company, under date of February 23, 1928, advised its district agent Leggitte that it would be unable to issue Mattie Ethel Few, appellee, a policy at that time, but offered to issue Jerry Gaston Few, the husband, a policy on the twenty-year pay life plan, if same would be accepted. Under date of February 27, 1928, Leggitte wrote Mr. Few inclosing the letter from the home office declining to issue policy to his wife, and in this letter of transmissal Leggitte advised Mr. Few to accept the company's offer of a policy on his life as offered by the company. Mrs. Few, while testifying as a witness in her own behalf, stated that, on the receipt of this letter she, for her husband and at his request, wrote a letter to Mr. Leggitte, addressed to him at Chatom, advising that her husband would take the policy, and that her husband said for him to send the policy on. Leggitte would neither affirm nor deny that he had received such a letter from Mrs. Few. Bellah, the state agent, denied that he had received the letter, and the company's agents at Galveston also denied that any such letter reached the home office.

On the 5th day of March, 1928, Leggitte wrote Bellah, state agent at Birmingham, Ala.: "I have written Mr. Few, but have not heard from him. I think it will be all right to issue the policy for Jerry Gaston Few, as I believe I can deliver same to him." Previous thereto, on February 29, 1928, the company, by J. A. Lile, cashier, at Birmingham, had written Leggitte, at Chatom, as follows: "Please refer to our letter of the 23 inst., and advise us by return mail what disposition you desire made of the above case," referring to application of Mr. and Mrs. Few, Walker Springs, Ala. On March 8, 1928, Bellah, state agent, wrote the company: "In re. Jerry Gaston Few, Walker Springs, Alabama.— Replying to your letter of February 27th, will ask that you issue a twenty payment life policy to the above."

The policy upon the life of Mr. Few was issued at the home office, at Galveston, Tex., on March 22, 1928, and mailed to Z. E. Bellah, manager of the company at Birmingham, Ala., some time between the hours of 3 and 5 p. m., March 23, 1928. On March 24th, the policy was mailed from Birmingham to Leggitte, agent of the company, at Chatom. Just when it reached Leggitte the testimony does not show, but he testified that he promptly mailed it to J. G. Few at Walker Springs, and Plaintiff's Exhibit X, which purports to be a copy of a letter from Leggitte to Jerry Gaston Few, reads:

"Chatom, Ala. March 27, 1928.
"Mr. Jerry Gaston Few, Walker Springs, Alabama.

"Dear Mr. Few: I am enclosing policy as per letter some time ago. I will be over at your place possibly next week, as I am intending to go to Grove Hill and will come by to see you. Any how I will see you in the near future. With best wishes, I am,

"Yours very truly,

"J. W. Leggitte."

This then shows that the policy never actually left physical possession of the defendant's said agent until March 27, 1928. Few died at Mobile, Ala., on March 25th. The application, which is attached to and made a part of the policy of insurance, contains this, among other provisions: "And I furthermore agree that the note, if any, above mentioned was executed solely for my convenience in arranging settlement in the event my application is approved by the home office of the company and shall be valid only in that event and that the receipt given for the same shall in no wise be construed as assumption of liability by the company until the date on which the application is finally approved at its home office, and policy issued and delivered to him, whether or not the total of the cash, if any, and amount of the note receipted for equals the entire first premium on the policy applied for, and that in the event no cash settlement or only partial cash settlement for the first premium on account of the policy applied for is shown above, it is mutually agreed that no liability by reason of this application or said policy applied for is assumed by the company, until said policy is delivered to me while I am in good health and until I have made full settlement in cash with the company on account of said first premium."

Mrs. Few, in her answer to interrogatories propounded to her by defendant, stated that she did not make any payment at the time the applications were made, and further stated, "but I do not know what my husband did." On her examination as a witness in the cause, however, she testified that her husband paid Leggitte $3.96, which happens to be the term premium on the policy actually issued. Leggitte testified that Few at the time the applications were made paid him no money, but gave him a note to cover the quarterly premium and the term premium added on the policy applied for, which was a joint twenty-year endowment policy. Witness further testified: "When I get a note I take the note on the in-

sured and pay the premium to the company myself. The note is made payable to me. The company would not take a note, would not take mine. They never did take any of mine, I don't think. I was responsible to them, and, of course, the insured was responsible to me"; that the policy issued was a twenty-payment life, and that he never saw Mr. Few after taking the application. No new note was given for the changed policy contract, nor any payment made thereon by Mrs. Few until in May, following the death of her husband. The policy issued recited payment of the first premium thereunder. Whether the premium was the same on a joint twenty-year life as it was on a twenty-year payment life, the evidence is not clear; however, the witness Leggitte testified: "The note was for a joint life and the term on that other policy might have been a little different."

On April 5, 1928, Leggitte sent his personal check to the American National Life Insurance Company for $7.24. This check was never cashed, and the defendant company has never returned it to Leggitte or to any one else. This check was to pay the net term premium.

Few died on March 25, 1928. He first showed symptoms of final illness on March 14, 1928. Dr. R. E. Shaw, first attending physician, testified he visited and prescribed for Few on the 17th, and he last visited him on March 21, 1928. Few was then removed to Mobile, Providence Infirmary, and there died on March 25th from pneumonia, which was complicated with, or induced by, "flu." Dr. Shaw, in his certificate as one of the attending physicians, stated that during the progress of the disease (between March 17th and March 21st) the symptoms present were fever, pain inside, and bloody sputum.

It thus appears that the policy was not and could not have been delivered after its date to the said Few at a time when he was in good health, even if the delivery could be said to have been made on the day it was actually signed by the company and started on its journey. Mr. Few was then seized with a fatal malady, from which he succumbed before the policy actually reached his post office. When the application was made Few was in good health, and the state of his health, when Mrs. Few, for her husband, notified the district agent Leggitte her husband would accept the policy offered, was not shown to be bad.

If there were no other questions involved than the condition of the health of insured, defendant might have been entitled to the affirmative charge; but for other reasons, which will be stated, the defendant was not entitled to this charge. There was evidence in the case which afforded the inference, at least, that, at the time the application was made by Few for the joint twenty-year life policy, he paid the district agent, who confessedly had authority to receive the payment, $3.96, which covered the term insurance on the policy, while this agent testified that Few gave him his note for the term and first quarterly premium. The evidence is not clear as to the amount of the note, but Leggitte testified that it may have been a little less than the amount afterwards paid to him in May, 1928, by Mrs. Few, which was $41.81. And Leggitte further testified that this money had never been returned to Mrs. Few.

On May 30, 1928, the state manager of defendant wrote its district manager acknowledging receipt of death proof, but calling attention to the fact that the policy did not accompany the proof of death papers, and stating it would be necessary for the company to have same before action could be taken, and also to have a newspaper clipping of the death of Mr. Few. Leggitte had Mrs. Few forward the policy to the company on May 31, 1928. The certificate of the attending physician, made a part of the proof of death papers, disclosed the illness of Mr. Few, its commencement, duration, and his death on March 25th.

That the jury could well find from the evidence that the defendant waived the provision as to delivery of the policy while in good health seems clear to us. This provision of the policy was inserted for the benefit of the insurer, and, being for its benefit, it could waive same. United States Life Ins. Co. v. Lesser, 126 Ala. 568, 28 So. 646; National Life Ins. Co. v. Reedy, 217 Ala. 114, 115 So. 8; Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307.

That there was evidence before the jury that the provision of the policy as to good health of insured was waived by the defendant, we quote the letter written by the state manager of the defendant to Mrs. Few:

"Birmingham, Ala., July 9, 1928.

"Mrs. Mattie Ethel Few, Walker Springs, Ala.
"In re Jerry Gaston Few,
"Policy No. 255891.

"Dear Madam: This company is handicapped in its consideration of the above claim due to lack of satisfactory information regarding the settlement of the premium.

"We enclose self addressed envelope for your convenience in supplying us with full and complete information as to when and how premium was paid, exact date is absolutely necessary, and the exact manner in which the same was paid. If you are not at present in possession of this information, it will be necessary for you to procure same, and forward to us. If Mr. Few gave his note to J. W. Leggitte, and the same has now been paid, please attach the paid note to your reply, also

state how you paid the note and to whom. A prompt reply is requested.

"Yours very truly,

"Z. E. Bellah, State Manager."

At the time this letter was written, Bellah had in his possession a letter from the district manager, Leggitte, advising him that "The only settlement given at the time application was written, was note settlement." And the evidence also tends to show that this note was paid before maturity by Mrs. Few, but after the death of her husband. There was also testimony before the jury tending to show that Leggitte had authority to take notes of applicants for insurance; he being personally responsible to the company for its part of the premium covered by the note.

In the case of Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175, 181, this court held that the taking of a note by agent with authority for the first premium waives actual payment in cash until the note falls due, according to contract provisions, and default in the payment of such premiums at maturity renders the insurance uncollectible. In the instant case, there was no such default.

■ In these circumstances defendant was not entitled to the general affirmative charge, as such charge should never be given in any case when any inference of fact, unfavorable to the party asking it, can be drawn from the evidence. Birmingham Rwy. Co. v. Enslen, 144 Ala. 343, 39 So. 74; M., J. & K. C. Co. v. Bromberg, 141 Ala. 258, 37 So. 395.

In its insistence that it was entitled to the general charge, appellant presses upon our attention the cases of Ivie v. International Life Ins. Co., 217 Ala. 559, 117 So. 176; Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 82 So. 175; Sturdivant v. Mt. Dixie Sanitarium, Land, etc., 197 Ala. 280, 72 So. 502, and Ala. Gold Life Ins. Co. v. Mayes, 61 Ala. 163. It will be noted that in the Ivie Case, supra, the death of the applicant occurred within four days of the application and before the company had passed on the application. The court held, as it was bound to do, that the contractual status of the parties became fixed upon the death of the applicant, and that no new contract could be created between the parties by waiver or estoppel. In the instant case, the evidence afforded inference, at least, that acceptance of defendant's counter offer had been made and conveyed to defendant, and defendant had acted on it.

In the case of Cherokee Life Ins. Co. v. Brannum, supra, two notes were given for the premium; one due on delivery of the policy according to its terms, and the other at a future date. The court held that the first premium was not paid as required in the application for insurance as to the $50 note. In the instant case there was evidence tending to show payment of the term insurance on the policy applied for, and a note given for the first quarter thereafter, and this note had not matured at the time the policy was delivered. This money the defendant or its authorized agent still holds, and the full premium for the year was paid to defendant's agent by the beneficiary, and the same has never been returned.

There is nothing in the Sturdivant Case, supra, which conflicts with what is herein held.

In the case of Ala. Gold Life Ins. Co., v. Mayes, supra, the company had not accepted the proposal for insurance, but rejected it. In the instant case, while the defendant rejected the applications for a joint twenty-year endowment policy, it offered to issue to Jerry Gaston Few a twenty-year payment policy, and there was evidence tending to show that Few accepted the offer, and that the policy was written and deposited in the mails.

"Whether or not a policy was delivered after its issuance, depends upon the intention of the parties as shown by their acts or agreements. Whatever the conduct or agreement of the parties shows was to have amounted to a delivery will control." 11 Amer. & Eng. Ency. Law (1st Ed.) 285; Home Ins. Co. v. Adler, 71 Ala. 516, 526; Phœnix, etc., Co. v. McAuthor, 116 Ala. 659, 660, 22 So. 903, 67 Am. St. Rep. 154; Farmers' Mutual Ins. Ass'n of Ala. v. Stewart, 192 Ala. 23, 68 So. 254.

■ The general rule, in the absence of a special contract to the contrary, is that the policy is considered delivered to the insured, when it is delivered by the company to the agent. This delivery is sufficient to put the insurance into effect, though the agent may retain the policy in his own keeping. Cooley's Briefs, 442–449; Stephenson v. Allison, 165 Ala. 238, 51 So. 622, 138 Am. St. Rep. 26. And in the case of Triple Link Mutual Indemnity Ass'n v. Williams, 121 Ala. 138, 26 So. 19, 77 Am. St. Rep. 34, it is held, in an opinion by Chief Justice McClellan, that a policy of insurance is delivered to the insured when it is put in the mail, duly directed to the insured, and with postage prepaid.

The facts in the case of Powell v. Prudential Ins. Co., 153 Ala. 611, 45 So. 208, are not analogous to those in the present case.

■ We think under the facts, this case presented a jury question.

■ It is next insisted that the court committed reversible error in sustaining plaintiff's objection to the following question propounded by defendant to witness Leggitte: "At that time did you also take an application for a policy on the life of his wife, Mrs. Ethel Few, or Mattie Ethel Few?" This question should have been allowed, but the case

will not be reversed therefor, inasmuch as plaintiff admitted in her answers to interrogatories propounded to her by defendant that she had also made application for policy of insurance with defendant at the time her husband made his application, and this evidence was also otherwise before the jury fully.

There is no merit in appellant's fourth assignment of error. The question was not completed before defendant interposed its objection, and no answer appears to have been made. Likewise we discover no error as for any grounds assigned by defendant in the ruling of the court made the bases of appellant's assignments 5, 6, and 7. This statement of account between Leggitte, district agent, and Bellah, state agent, showed dealings between them relative to the policy and the premium thereon, and was admissible in evidence in the case. It tended to show the amount of the term insurance due on the Few policy sued on was carried as a charge account against Leggitte, the district manager, and tended also to show that said policy had been written and delivered.   .

It is next insisted that the trial court committed error in overruling defendant's objection to the following question propounded to the witness Leggitte: "That policy is dated March 22nd, isn't it? That term insurance slip that is pasted there indicates that he is insured from March 20th. As an insurance man, what is your understanding about that? The policy is dated from March 20th. I want you to explain that?" The attached slip referred to in this question shows that the defendant insured the life of Jerry Gaston Few under the attached policy for $1,000 from March 20, 1928, to June 20, 1928. Whether the question was objectionable or not, the answer of the witness and the specified portion of the policy were the same in legal effect, and therefore defendant was not injured.

Appellant, in brief, insists that the evidence shows that Leggitte, its district agent, failed to co-operate with the company in this transaction; that he, in his actions subsequent to the death of Few, acted in his own interest, or in the interest of the plaintiff, and adversely to the interest of his principal; that he, upon learning of the death of Few, on April 5, 1928, mailed to the state agent "his personal check for $7.24 to cover the net premium on the policy sued upon, although at said time he had not received any money whatever on the premium." The implied insistence being that this was a fraud on the defendant company. Appellant overlooks the fact that Mrs. Few had testified that her husband, at the time the application was taken, gave Leggitte $3.96 to cover the net term insurance premium, and also had given this district manager his note, and also overlooks the testimony that the district agent had been allowed to pursue this course of dealings by the company. We are not in accord with appellant that all the acts of Leggitte, subsequent to the death of Few, upon which the alleged waiver or estoppel could be predicated, were done while he was acting adversely to the interest of his principal, and therefore that the company should not be bound thereby. As we view the evidence in the record, these were jury questions, and the defendant was not entitled to the general charge based thereon.

The defendant's requested charges 3, 4, and 7, which constitute bases for assignments of error 11, 12, and 13, pretermit consideration of that phase of the case predicated upon a waiver by the defendant of the provision of the policy as to good health. Nor was the defendant, under the evidence in the case, entitled to have the jury instructed in the terms of any of its refused charges.

This suit, as above stated, was upon an insurance policy by the defendant upon the life of Jerry Gaston Few; attached to and made a part of this policy was the written application of the insured. The plaintiff, to make out her case, introduced the policy in evidence, together with the attached application. It is quite certain that if the policy offered (which contained the application) was not accepted by Few, then it would necessarily follow that the minds of the contracting parties had never met, and there was no policy. And the plaintiff, having elected to sue on the policy as actually delivered, cannot adopt a part which is favorable to her, and repudiate the part which is unfavorable. She must, in the circumstances of the case, take it as an entirety. As well said by counsel for appellant, "having elected to regard the policy sued upon as a binding contract, she was bound by all the terms and provisions therein, including those in the application attached thereto."

Of course if the defendant waived any of those provisions after the issuance of the policy that would present another and different question.

We are therefore at the conclusion the court erred to a reversal in the following portions of its oral charge which were duly and separately excepted to by the defendant:

"I charge you that if the company issued a policy without an application, then the application which the insured signed for some other policy would not be binding, unless he consented thereto and ratified the fact that it was attached to the policy and any provision or warranty that was in the application signed by him for this policy would not be binding on him unless it was agreed to by him and the company.

"But if the application was made by the insured for one policy and that was declined by the company, but the company thereafter in order to obtain business or for the pur-

pose of endeavoring to insure the insured, wrote a different policy and sent it to its agent with instructions and authority for its agent to deliver to insured and he tried to get the insured to accept it and insured did accept it, why, whatever warranty was contained in the application for the other policy would not be binding on him unless it was agreed and understood that it should also be a part of this contract.

"Now, gentlemen, it is for you to say from this testimony whether or not when the defendant company offered this new policy to the insured, and if the insured accepted it, if it was understood that the provision should be made a warranty or part of the contract whereby it was to be delivered and become effective only after the first premium was paid and received while the insured was in good health, if it was, those provisions would have to be complied with unless the company either waived them or unless the company by any act is estopped from setting those things up in this case."

Construed in connection with the court's entire general oral charge, we find no error in the remaining portions of the charge which were excepted to by defendant.

For the above errors, the judgment appealed from will be reversed.

Reversed and remanded.

ANDERSON. C. J., and THOMAS and BROWN, JJ., concur.