**NEW YORK LIFE INS. CO. v. McJUNKIN.**

**5 Div. 141.**

Supreme Court of Alabama.

June 9, 1933.

Rehearing Denied Sept. 28, 1933.

Rushton, Crenshaw & Rushton, of Montgomery, for appellant.

Pruet & Glass and M. P. Kelly, all of Ashland, for appellee.

230

THOMAS, Justice.

The question for decision is whether the policy was delivered or became the contract of insurance. If not, the court was in error in rendering judgment for the plaintiff.

The evidence is in material respects uncontradicted. The policy in evidence purported to insure the life of decedent, and the wife, plaintiff here, was the named beneficiary. That instrument was not in her possession, but was exhibited to the deposition of one of defendant's executive officers. It is in the usual form of such contracts, was of date of March 23d, and taking effect as of the 11th day of March, 1931, the stated anniversary date of that policy; the policy and application therefor attached constituted the contract sought to be made or that which was entered into by the parties.

A copy of the application for insurance is attached and contained the following provisions:

"For further plea the defendant saith that on towit, the 11th day of March, 1931, the said Joseph C. McJunkin made written application to the defendant for insurance on his life.

"That application contained certain questions and answers, among which were the following:

" 'Question 2. Sum to be insured $2,000.00. Premiums, how payable? Annual. Age nearest Birthday? 33.

" 'Question 3. Plan of insurance? 14 year term. Date policy as of: Date of this application.'

"That said application, among other things, also contained the following:

" 'It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination; provided, however, that if the applicant, at the time of making his application, pays the agent in cash the full amount of the first premium for the insurance applied for in Questions 2 and 3 and so declares in this application and receives from the agent a receipt therefor on the receipt form which is attached hereto, and if the Company, after medical examination and investigation, shall be satisfied that

the applicant was, at the time of making this application, insurable and entitled under the Company's rules and standards to the insurance, on the plan and for the amount applied for in Questions 2 and 3, at the Company's published premium rate, corresponding to the applicant's age, then said insurance shall take effect and be in force under and subject to the provisions of the policy applied for from and after the time this application is made, whether the policy be delivered to and received by the applicant or not. 2. That a receipt on the form attached as a coupon to this application form is the only receipt the agent is authorized to give for any payment made before the delivery of the policy. 3. That only the President, a Vice-President, a Second Vice-President, a Third Vice-President, a Secretary or the Treasurer of the Company can make, modify or discharge contracts, or waive any of the Company's rights or requirements; that notice to or knowledge of the soliciting agent or the Medical Examiner is not notice to or knowledge of the Company, and that neither one of them is authorized to accept risks or to pass upon insurability.'

"And defendant avers that at the time of making said application the said Joseph C. McJunkin did not pay the soliciting agent of the defendant company who solicited said insurance from him, viz., C. S. Chapman, in cash the full amount of the first premium for the insurance applied for in Questions 2 and 3 of said application, and did not so declare in said application and receive from said agent a receipt therefor on the receipt form attached to said application.

"Defendant further avers that said C. S. Chapman was neither the President, a Second Vice-President, a Third Vice-President, a Secretary nor the Treasurer of the defendant company, but was a soliciting agent. Defendant further says that said application was duly received at the defendant's Home Office in the City of New York and on, to-wit, the 23rd day of March, 1931, a policy of insurance of the kind and nature applied for, which contained a part thereof the said application signed by said Joseph C. McJunkin, was written by the defendant and forwarded by it through its Branch Office at Birmingham, Alabama, to the said C. S. Chapman, the said soliciting agent, on or about March 26th, 1931; that prior to said March 26, 1931, the said Joseph C. McJunkin had consulted and been treated by a physician or physicians since his medical examination which accompanied his said application for said policy of insurance, and on said March 26th, 1931, the said Joseph C. McJunkin was ill from pneumonia; that upon receiving information of such illness of said McJunkin, said Chapman returned said policy to the said Branch Office of defendant at Birmingham. And defendant avers that said policy was not delivered to or

received by said Joseph C. McJunkin and the first premium thereon paid in full during his lifetime.

"And defendant avers that, other than hereinabove alleged, it had no negotiations with said Joseph C. McJunkin for a contract or policy of insurance on his life by any of its agents thereunto authorized.

"Wherefore, the defendant says it is not liable in this action."

It was upon these issues of fact and that as to the giving of the premium note for $25.16 of date of March 11th, 1931, not on the company's form, but on a form locally printed, that the case was tried and judgment rendered for plaintiff by the court without a jury.

The assured was a minister at Goodwater, and defendant's special agent was a resident of Sylacauga, whose duties consisted of canvassing for applications for insurance, and the performance of such other duties in connection therewith as the officers of said company may in writing expressly require of him, according to the purpose of his agency contract before the court. This contract denied the agent taking the application the authority (1) to "accept risks of any kind"; (2) to "make, modify or discharge contracts"; (3) to "extend the time for paying the premium"; (4) to "bind the company by any statement, promise, or representation"; (5) to "waive forfeitures or any of the company's rights or customary requirements"; or (6) "to receive any moneys due or to become due, * * * except upon application(s) obtained by or through him, and then only in exchange for the coupon receipt attached to the application corresponding in date and number with the application, and in amount not exceeding the first premium" so taken and sold.

The agent, as a witness for defendant, testified: That he solicited the insurance, identified his agency contract and the application for insurance signed by assured, which contained the provisions as set out in plea 2 above; that he sent the application (and the note in question) to the company for approval; that there was a request for additional information regarding applicant's health; that the doctor made a re-examination of the applicant, which was duly reported to the Birmingham branch office; that thereafter he received the billing of the policy informing Chapman that the policy was ready for delivery and collection of premium, subject to the company's rules.

The indorsement or letter of instruction is, in effect, article 17 of "Instruction to Agents," which was in evidence.

That witness (the agent) further testified that he received the policy on March 26, 1931, after he had heard of the illness of the assured, and returned it to defendant's branch office accompanied by a letter conveying information of such illness. The witness tes-

tified further: That at the time the application was made assured did not pay any money, but gave witness his note for the cash premium, of date of March 11, and due June 11, 1931; that he forwarded the note to the Birmingham agency; that the note was not upon the company's form; that it was not paid by assured *who died before its due date;* that third parties sought to pay the same after the illness of assured and before his death, and this was declined; that when assured made the application witness did not give him a receipt indicating cash payment of the first premium, nor did he sign a statement that he had paid in cash.

The testimony of Singleton and Gilliland was of their effort to pay the premium to Chapman after that agent and the other parties knew of the serious illness of assured which culminated in his death before the due date of the note.

The plaintiff testified, in answer to defendant's interrogatories, that her husband was taken ill at noon on March 21, 1931, and lingered until April 3, 1931; and that he had two physicians attending him to the date of his death.

On this disputable evidence the judgment was for plaintiff by the court without a jury, for the amount of the policy, interest, and costs.

In Powell v. Prudential Ins. Co. of America, 153 Ala. 611, 619, 45 So. 208, the policy, as here, contained provisions denying the soliciting agent the power to modify or alter the policy or application, or to extend the time, etc., and the only delivery was made by appellant's physician after the death of the applicant who had been sick for over a month. This is not so of the power of general agents within the scope or extent of the agency, in National Life Ins. Co. of United States of America v. Reedy, 217 Ala. 114, 115 So. 8; Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399.

In the cases of Mutual Life Ins. Co. of New York v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16, the applicant became ill after application for and before delivery of the policy; held the intervening illness was fatal to recovery under the contract stipulating that the *insured must be in sound health, and not suffering from a fatal sickness which renders him or her uninsurable;* that such stipulation may be regarded as of the essence of life insurance. Independent Life Ins. Co. of America v. Butler, 221 Ala. 501, 129 So. 466.

In Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23, 24, the policy was delivered during illness and without a knowledge of the illness; held knowledge of the insured being seriously sick is the equivalent of knowledge by the assured that he was not

in sound health; that the agent was not empowered to waive condition as to sound health "in the face of contractual stipulations to the contrary," and that on the undisputed evidence as to this, the defendant was entitled to the general affirmative charge as requested. See, also, North Carolina Mut. Life Ins. Co. v. Kerley, 215 Ala. 100, 109 So. 755. There are other and later cases on the, effect of condition as to delivery while the insured is in good health. Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714; National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 146 So. 524.

It is likewise established that the ordinary life·insurance policy (not the subject of special contract to the contrary) will not take effect until it is delivered and the first premium paid during life and when the applicant was in good health, when so stipulated between the parties. Cherokee Life Ins. Co. v. Brannum, 203 Ala. 145, 147, 82 So. 175; Commonwealth Life Ins. Co. v. Barr, 218 Ala. 505, 119 So. 11; American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234.

■ The foregoing decisions were on contracts different from the one before us, in that it was not expressly contracted that the policies should issue and be effective as of the dates of the applications. Any condition inserted in a policy for the benefit of the insurer may be waived by one having authority, and consideration is not essential to such waiver when once made. State Life Ins. Co. v. Finney, 216 Ala. 562, 114 So. 132; Georgia Home Ins. Co. v. Allen, 119 Ala. 436, 24 So. 399; ·North River Ins. Co. of City of New York v. Waddell, 216 Ala. 55, 57, 112 So. 336, 52 A. L. ·R. 838; Tedder v. Home Ins. Co., 212 Ala. 624, 103 So. 674.

■ Assurer is not permitted to deny liability on a policy for nondelivery of a receipt for cash payment of the first premium, by its acceptance of the application and insured's note in full for such premium and the issuance of the policy with the acknowledgment of the payment of the first premium in such manner. There is analogy in State Life Ins. Co. v. Finney, supra; Liverpool & London & Globe Ins. Co. v. McCree, 213 Ala. 534, 537, 105 So. 901; Washburn, Adm'r, v. Union Central Life Insurance Co., 143 Ala. 485, 489, 38 So. 1011.

■ The question recurs, when was there a completion of the contract—whether on the approval of the application and payment of premium, or on delivery of the policy to assured? National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886. Assurer's general agent had authority, notwithstanding the provisions of the policy, to accept payment otherwise than in cash, and bind the company by the taking and approving of the application for the policy, and the acceptance of the note for the first payment of premiums.

Protective Life Ins. Co. v. Green (Ala. Sup.) 147 So. 442,[1] and authorities; United States Life Insurance Co. v. Lesser, 126 Ala. 568, 28 So. 646; Insurance Co. of North America v. Williams, 200 Ala. 681, 687, 77 So. 159; Wuertz v. Life & Casualty Ins. Co. of Tennessee, 10 La. App. 70, 120 So. 72. That is the effect of taking the note, its transmission with the application, the issuance of the policy and delivery to the agency having the note and having transmitted the application. Cherokee Life Ins. Co. v. Brannum, supra; American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234, and authorities; Satterfield v. Fidelity Mutual Life Ins. Co., 171 Ala. 429, 55 So. 200; Commonwealth Life Ins. Co. v. Barr, 218 Ala. 505, 119 So. 11; Johnson v. Commonwealth Life Ins. Co., 223 Ala. 668, 138 So. 257, 83 A. L. R. 822; Manhattan Life Ins. Co. v. Parker, 204 Ala. 313, 85 So. 298.

In Reliance Life Ins. Co. v. Russell, 208 Ala. 559, 562, 94 So. 748, 751, it was declared: "It is not averred in the plea that there was any stipulation in the note, in the application, or in the policy, that the failure to pay at maturity a note received as payment of the initial premium should terminate, should forfeit the insurance on or after the maturity of the note. In the absence of effective contractual stipulations so concluding (Satterfield's Case, 171 Ala. 429, 55 So. 200; Brannum's Case, 203 Ala. 145, 82 So. 175, and Norris' Case, 198 Ala. 41, 73 So. 377, in each of which the contractual status considered was materially different in respect to forfeiture from that disclosed by the present plea 3), the failure of the insured to pay a note, authoritatively received as payment of the premium, wrought no forfeiture of the insurance for the period such premium would maintain the insurance. 25 Cyc. pp. 826–828." Johnson v. Commonwealth Life Ins. Co., 223 Ala. 668, 672, 138 So. 257, 83 A. L. R. 822.

■■ Under the undisputed evidence the defendant was not entitled to have a judgment in its behalf, on the ground that the policy was never delivered within the contract and contemplation of the parties. Bankers' Credit Life Ins. Co. v. Ayres, 223 Ala. 407, 137 So. 23; Life Ins. Co. of Virginia v. Newell, 223 Ala. 401, 137 So. 16, and authorities; Lincoln Reserve Life Ins. Co. v. Fowler, 222 Ala. 348, 132 So. 37; ·Commonwealth Life Ins. Co. v. Barr, 218 Ala. 505, 119 So. 11; National Life Ins. Co. of U. S. of America v. Reedy, 217 Ala. 114, 115 So. 8. The contract, antedating the policy, was the time of the application; made at a time when assured was in good health and not suffering from his last illness; a condemned illness, or one contracted against. He paid or arranged with the agent for the payment of the sufficient consideration to give him indemnity against disease and death, on and from the date of March 11, 1931. It took

---

[1] 226 Ala. 512.

effect and was of force under and subject to the provisions of the policy *applied for, "from and after the time this (the) application was made, whether the policy be delivered to and received by the applicant or not."* Generally, and in the absence of a special contract to the contrary, a policy is considered delivered to an insured when it is delivered by the insurer to the agent. American Nat. Ins. Co. v. Few, 224 Ala. 576, 141 So. 234. (Italics supplied.)

■■ The stipulation for the receipt to be given the applicant was for the benefit of the applicant and may be waived. American Nat. Ins. Co. v. Few, supra. The acceptance and retention of the premium note and sending it to the general agent, as and for the time indicated in the evidence, amounted to payment *to the agent in cash of the full amount of the first premium for the insurance applied for*, or the waiver thereof by the general agent. National Life Ins. Co. of U. S. of America v. Reedy, 217 Ala. 114, 115 So. 8. It was merely a debt against the policy that the general agent had the right to collect and take, or accept in lieu of cash.

■■ The payment of the premium is of the essence of the risk of insurance. Pacific Mut. Life Ins. Co. v. Watson, 223 Ala. 571, 137 So. 414. A promise by a third party to pay is not sufficient; the payment, however, is sufficient, though made by a third party. Lincoln Reserve Life Ins. Co. v. Fowler, 222 Ala. 348, 132 So. 37; Janusa v. Scovotto, 16 La. App. 663, 135 So. 70..

In United States Life Insurance Co. v. Lesser, 126 Ala. 568, 580, 28 So. 646, it was declared: "A condition in a policy of life insurance 'that no person other than the president, together with the secretary or actuary shall have power to alter or waive any contract or condition on behalf of the company,' while valid and intended to restrain and to give notice of the restriction of the authority of agents as distinguished from the officers of the company, is a mere condition reserved for the benefit of the company; and of this condition the company can, at its volition, take advantage, or waive it and delegate to agents the implied power vested in the president, together with the secretary or actuary."

The agent taking the application and premium note was "operating" under the Birmingham branch, reported thereto, and had instructions therefrom. The agent said:

"That he had a percentage on the first premium as his compensation for writing the insurance; that the note was his until it was collected; that he had to account to the company for a portion of the first premium upon the policy.

" * * * That he did not keep a deposit with the company to take care of matters when handled as this was handled, and did not give security of any kind; that he did not keep a deposit for the company to take care of their part of the premium; that he took notes, but that it is not customary for the company to trust him for their part of the notes that he took for premiums; that the company got their part of the notes when he collected it, and he had an understanding, but that they did not trust him but honored him; that when the company issued a policy they charged to him their part of the premium when they sent the policy; when I issue a receipt for cash the company charges it to me when it is cash. When I issue a receipt in cash the company charges it to me when I sign. When the company issues their receipt for cash they require me to pay in their part of it when there is a cash payment. This policy was issued. This is a cash policy and I acknowledged receipt of cash. The company did issue a receipt for cash in this case. * * *

"I took his ninety day note and that is what I did. That is all I said. I did not mean that part of it, that I took the note to help Dr. McJunkin out; that part that I meant was, I took the note for a ninety day note. The policy would have been delivered if the man had been in good health when it came back to me. If I had delivered the policy I would not have asked for a payment at that time. I took the man's note for premiums due at ninety days like I do some others."

The witness Campbell testified: That he was cashier for the *Birmingham branch office of the New York Life* Insurance Company; that there is no general agent for the defendant in the state; that all policies come through his hands; that neither he nor any one else to his knowledge ever accepted a note as cash in connection with the policy sued upon; that he received the note in question, and the record thereof was: " 'Note received in the Branch Office March 13th, 1931, dated March 11th, 1931, for $25.16, due June 15th, 1931.' * * * That the note was returned to Mr. Chapman on March 25th, 1931, with the policy and then later returned by Chapman to the Branch Office. * * * That the note accompanied the policy back to Mr. Chapman, that the policy was sent for delivery; that the note was sent back because it was Mr. Chapman's note and he was doing the collecting for himself; that he took a record of all notes sent to him in order to know what settlement the agent was making on the policy; that the custom of the defendant was to keep the note in the Branch Office to see what disposition the company would make of the application; that no information as to how settlement is made is given the Home Office unless cash accompanies the policy; that the Home Office at the time this policy was issued knew the cash

had not been paid; that the receipt for the first premium on the policy acknowledging that it is paid in cash is in all of them." The witness was asked: "'In other words, you waive that, don't you?'" To which he answered: "'Well'"—and further testified: "We have a form that we issue all policies on. We waive the premium if it is not paid in cash. The policy is issued regardless of whether or not it is paid in cash. * * * That the policy in question is written upon the form used for policies of that particular type of insurance; it is up to the agent to send the company a check for whatever he has collected and if he has not collected anything, it is up to him to return the policy; if the agent delivers the policy it is up to the agent to send the money; that the agent can either pay the money or return the policy; that the agent has to either get the policy or the money; that the note came to the office once and then came back to him. Mr. Chapman sent it back with the policy and wanted to know what to do with it. He does not know what the company told him to do with the note."

The witness McCall testified that C. S. Chapman, during the year 1931, did not have authority, for and on behalf of the New York Life Insurance Company, to accept risks of any kind; to extend the time for paying any premium; to bind said company by any statement, promise, or representation; to receive from an applicant the promissory note of such applicant for the first premium in lieu of money for same in order to bind the New York Life Insurance Company from the time of the receipt of such premium; did not have power or authority to bind the New York Life Insurance Company by delivering a policy without the payment of the first premium while the applicant was in good health; nor did he have authority to deliver any policy of insurance to any applicant therefor if any change whatever had occurred in the health or occupation of the applicant or if he had been consulted or treated by a physician since the date of his medical examination when applying for the policy. Witness further testified that the New York Life Insurance Company, during the month of March, 1931, had in force and effect a rule or regulation governing the authority and the acts of its agents to the effect that "insurance does not take effect until the policy is delivered to the applicant and the first premium paid in full during his lifetime and then only if the applicant has not consulted or been treated by any physician since his medical examination"; that the defendant company having such regulation in force and effect during March, 1931, Chapman had no authority to waive same; that the limitations of Chapman were set out in article 17 of

"Instructions to Agents." The witness was not specifically examined as to the authority of the agents in charge of the branch office of defendant who handled the note, application, and policy from and to Chapman.

There were adverse tendencies in the evidence that presented a jury question. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. The testimony of Gilliland and Singleton is sufficient to present such conflict under our authorities. Lincoln Reserve Life Ins. Co. v. Fowler, 222 Ala. 348, 132 So. 37; Protective Life Ins. Co. v. Green (Ala. Sup.) 147 So. 442.[1] And under our rule that obtains in such trials, we will not disturb the judgment rendered, having as it does the effect of a jury. Hackett v. Cash, 196 Ala. 403, 72 So. 52.

The judgment of the circuit court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.