**Thomas M. HUGHES, Plaintiff-Appellant,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Appellee.**

No. 71-2843

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1972.

S. Palmer Keith, Jr., Birmingham, Ala., for plaintiff-appellant.

Dunn, Porterfield, McDowell & Scholl, Jack B. Porterfield, Jr., John W. Clark, Jr., Birmingham, Ala., for appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

RONEY, Circuit Judge:

This is an appeal by plaintiff Thomas M. Hughes, Sr. from a directed verdict in favor of defendant Equitable Life Assurance Society. We conclude that the district court decision to direct the verdict in favor of the insurance company was incorrect, and we therefore remand for a new trial.

Plaintiff was the beneficiary of a $100,000.00 life insurance policy issued by Equitable insuring his son, Thomas M. Hughes, Jr. After his son died accidentally, plaintiff presented proof of death and claimed the proceeds of the policy. The defendant insurance company rejected the claim, however, asserting that the policy had lapsed before the insured's death for nonpayment of premiums. Hughes sued Equitable on the policy. At the conclusion of the plaintiff's evidence, defendant moved for a directed verdict under F.R.Civ.P. 50. The trial judge did not grant the motion but reserved ruling. Defendant then presented its evidence. After the jury announced that it was deadlocked, the trial judge dismissed the jury and granted the insurance company's motion for a directed verdict, stating that "the evidence does not provide a legal basis upon which the jury could have returned a verdict for the plaintiff."

The question presented by this appeal is whether the plaintiff's evidence was sufficient to warrant a new jury trial. "It is well settled in this Circuit that in diversity cases federal courts apply a federal rather than a state test for the sufficiency of evidence to create a jury question." Boeing Co. v. Shipman, 411 F.2d 365, 368 (5th Cir. 1969). On mo-

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York, et al, 5th Cir. 1970, 431 F.2d 409, Part I.

tions for directed verdict and judgment notwithstanding the verdict, the trial court, and a reviewing court, must view the evidence and all inferences in a light most favorable to the party against whom the motion is made. Boeing Co. v. Shipman, *supra*. *Accord,* Jenkins v. General Motors Corp., 446 F.2d 377 (5th Cir. 1971), cert. denied, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972) ; Nevels v. Ford Motor Co., 439 F.2d 251 (5th Cir. 1971) ; Williams v. Slade, 431 F.2d 605 (5th Cir. 1970) ; Falcon v. Auto Buses Internacionales, 418 F.2d 673 (5th Cir. 1969) ; Hanover Ins. Co. v. Berry, 416 F.2d 279 (5th Cir. 1969) ; 2B Barron and Holtzoff § 1075 (Wright ed. 1961) ; 5A Moore's Federal Practice ¶ 50.02 [1] (2d ed. 1969).

■ Applying the *Boeing* "reasonable man" or "substantiality of the evidence" test, we find that plaintiff presented substantial evidence to support his claim and that the case must be retried before a jury.

■ The evidence must be judged against the controlling Alabama law governing two basic insurance propositions. First, an insurance agent's specific authority may be broadened by his apparent authority, and the insurance company will be bound by all of its agent's acts, contracts, and representations made within his real or apparent authority. United Burial & Insurance Co. v. Collier, 24 Ala.App. 546, 139 So. 104 (1931) states:

". . . the powers of an agent of an industrial insurance company are governed by the general law of agency. An insurance agent, whether general or special, possesses such powers as have been conferred by the company, or as third persons have a right to assume that he possesses under the circumstances of the case . . .

In [Alabama] an insurance company is bound by all acts, contracts, or representation of its agents, which are within the scope of his real or apparent authority. [Citations omitted]." 139 So. at 106.

■ Second, if an insurance agent has the legal authority to do so, either specifically conferred upon him by his company or visited upon him by law because of his apparent authority, he may take a note in payment of the first insurance premium. See New York Life Ins. Co. v. McJunkin, 227 Ala. 228, 149 So. 663 (1933) ; Couch on Insurance 2d § 33:17 (1961).

As to the issue of apparent authority, plaintiff testified that the agent told him that he (the agent) had paid the annual premium and wanted a note for it when he delivered the policy. According to plaintiff, he did not question the agent's authority to take the note in payment of the annual premium because the same agent had previously taken a note from plaintiff as a premium payment on a medical insurance policy.

Defendant argued that the agent was merely a soliciting agent, empowered only to solicit insurance and to collect initial premiums, and that he was not empowered to take a note for the first full year's premium.

In view of the agent's general duties, which the agent testified included soliciting insurance, selling and servicing life insurance, and collecting initial premiums, we think plaintiff was entitled to have a jury consider the question of the agent's apparent authority to accept a promissory note in lieu of a cash payment.

As to whether or not the agent actually took a promissory note for payment of the premium, the evidence is equally conflicting. Plaintiff testified that defendant's agent delivered the policy in question to plaintiff at plaintiff's home on February 6 or 7, 1969. According to plaintiff, the agent there told plaintiff that he had paid the first annual premium and that he wanted a signed promissory note from plaintiff in return. Two witnesses, plaintiff's wife Sarah and a friend Vana Taylor, both testified in support of plaintiff's story. They stated that the reported conversation between plaintiff and defendant's agent had taken place and that its substance was as

plaintiff had testified. According to them, the alleged conversation took place in the hallway of plaintiff's home, they heard it while sitting in a room just off the hallway, they saw the promissory note when plaintiff came to them to borrow a pen to sign it, and they saw plaintiff bring the policy in question with him when he returned from the hallway. Plaintiff, as well as his witnesses, testified that the note he signed and gave to the agent was for a sum of "three thousand and some dollars," since it included the annual premiums on both of his sons' policies and the first monthly premium on his daughter's policy.

Defendant and its agent offered a completely different version of the transaction. According to the agent, plaintiff ordered three life insurance policies through him from Equitable in December, 1968. These policies were to insure plaintiff's two sons Thomas and John and his daughter Grace. The policies were originally to be issued on an annual premium basis, but plaintiff decided to change them to a monthly premium basis, signed a Change of Payment form on behalf of Grace, and returned two other Change of Payment forms to the agent purportedly signed by the two sons. According to the agent, on December 31, 1968, he secured from plaintiff a promissory note for the total amount of the initial monthly premiums on all three policies, which he himself had paid. Then in January, 1969, he paid additional monthly premiums on behalf of John and Grace and on February 27, 1969, secured from plaintiff a new promissory note for $596.37 consolidating the five premium payments. The promissory note for $596.37 was introduced into evidence at the trial. The agent flatly disclaimed paying any annual premiums on any of the policies insuring plaintiff's children, and he denied both the occurrence and the substance of any February 6 or 7, 1969, conversation at plaintiff's home.

In rebuttal, plaintiff denied the validity of his sons' signatures on the Change of Payment forms and asserted that the $596.37 promissory note was for travel expenses he owed the agent, not for premium payments.

This dispute created a classic issue as to what the facts were, and that issue must be resolved by the jury.

Accordingly, on the questions of apparent authority and premium payment we hold that plaintiff presented "substantial evidence" which entitled him to a new jury trial.

Reversed and remanded.